D'AURIA, J.
**221 *1116 The defendant, John Panek, was accused of engaging in sexual activity with a woman in his home and, while doing so, making a video recording of the encounter without the woman's knowledge or consent. He was accused of doing the same thing on at least two other occasions with two other women. In three separate informations, the state charged the defendant with violating General Statutes (Rev. to 2009) § 53a-189a (a) (1).[1] This section generally prohibits a person from, knowingly and with malice, video recording another person "(A) without the knowledge and consent of such other person, (B) while such other person is not in plain view, and (C) under circumstances where such other person has a reasonable expectation of privacy ...." General Statutes (Rev. to 2009) § 53a-189a (a) (1). The present appeal concerns the meaning of the element requiring that the victim be "not in plain view" when she is recorded. General Statutes (Rev. to 2009) § 53a-189a (a) (1) (B). More specifically, we are asked to determine to whose plain view the statute refers.
**222 The defendant moved to dismiss the informations on the ground that the "not in plain view" element refers to the plain view of the defendant. He asserted he could not be charged or convicted under this statute for his conduct because each of the women he was with was within his plain view at the time he recorded them. The state responded that the "not in plain view" element of § 53a-189a (a) (1) referred instead to the perspective of the general public and that, because the defendant and the victim were inside his home at the time, they were "not in plain view" of the public when the alleged offenses occurred.[2] The trial court concluded that the statute plainly and unambiguously referred to the plain view of the defendant and dismissed the informations. The Appellate Court affirmed the judgments of dismissal. State v. Panek , 166 Conn. App. 613, 635, 145 A.3d 924 (2016).
Contrary to the trial court and Appellate Court, we conclude that the text of § 53a-189a (a) (1) plausibly could refer to either the plain view of the defendant or the general public, rendering the statute ambiguous. Consulting extratextual sources, we are persuaded that the "not in plain view" element refers to the general public. We also reject the defendant's alternative ground for affirming the judgment of the Appellate Court, namely, that the "not in plain view" element is unconstitutionally vague or overbroad. We therefore reverse the Appellate Court's judgment.
For the purposes of this appeal, the parties have stipulated to the following facts, taken from the affidavit supporting the warrants issued for the defendant's arrest. The defendant and his girlfriend (victim) were engaged in consensual sexual relations in the bedroom **223 of her apartment when she discovered he was secretly recording their encounter using his phone. She had not previously known about or consented to the recording and objected to it immediately. The defendant deleted the recording and claimed it was the first time he had recorded their sexual encounters. *1117 Suspicious that the defendant had stored other surreptitiously recorded videos on his home computer, the victim later traveled to the defendant's home to confront him and end the relationship. The defendant admitted to possessing other secret video recordings of their sexual relations on his computer, and, when the victim demanded he retrieve and delete all the video files, he quickly selected a folder on his computer labeled with her initials and deleted it without showing her its contents. The defendant told her that he could not show her where the recordings were stored on his computer because private images of other women were stored in the same vicinity. The defendant claimed the videos he possessed of other women were consensually recorded.
After the victim reported the incident, the police executed a search warrant at the defendant's home, including his computer equipment and electronic file storage devices. Although he initially told officers he did not possess any other nonconsensually recorded videos, the defendant later admitted he had photographed two other women without their knowledge or consent while they were undressed in his immediate physical presence.
The defendant was arrested and charged with voyeurism in violation of § 53a-189a in three separate informations, each one relating to one of the three women he recorded. The defendant moved to dismiss all charges on the ground that recording his own consensual sexual activity with another person cannot establish the second **224 element of the statute, namely, that the recording took place when the victim was "not in plain view." General Statutes (Rev. to 2009) § 53a-189a (a) (1) (B). Interpreting "not in plain view" to unambiguously mean not in plain view of the defendant , the trial court concluded on the basis of the stipulated facts that the state's evidence could not establish this element because each woman was in the defendant's immediate physical presence during the recordings and, thus, in his plain view. The court therefore dismissed all three informations.
The state appealed from the judgments of the trial court to the Appellate Court pursuant to General Statutes § 54-96, arguing that the phrase "not in plain view" in § 53a-189a (a) (1) (B) is ambiguous and must therefore be construed in light of its legislative history, which establishes that the statute refers to the plain view of the public. Because the women at issue were not in plain view of the public when the defendant recorded them, the state further argued that the second element of the statute would be satisfied in the present case. The Appellate Court disagreed and affirmed the trial court's dismissal of the case, concluding that the statutory language unambiguously referred to the plain view of the person making the recording, not the public. State v. Panek , supra, 166 Conn. App. at 635, 145 A.3d 924.
We granted the state's petition for certification to appeal to address the following question: "Did the Appellate Court properly construe the 'not in plain view' element of ... § 53a-189a, the video voyeurism statute, in affirming the dismissal of the charges against the defendant?" State v. Panek , 323 Conn. 911, 149 A.3d 980 (2016). In addition to the certified question, the defendant claims that the Appellate Court's judgment may be affirmed on the alternative ground that the "not in plain view" element of § 53a-189a (a) (1) is unconstitutionally vague and overbroad on its face and as applied to his conduct.
**225 I
We turn first to the certified question concerning the meaning of the "not in plain view" element of § 53a-189a (a) (1).
*1118 Applying plenary review to this question of law; see, e.g., State v. Fowlkes , 283 Conn. 735, 738, 930 A.2d 644 (2007) ; we disagree with the Appellate Court's interpretation and instead conclude that "not in plain view" refers to the plain view of the general public, not the defendant. Specifically, although the Appellate Court determined that the statute plainly and unambiguously referred to the plain view of the defendant, we conclude that the statutory language-which is hardly a model of clarity-is ambiguous about whether it refers to the plain view of the defendant, the general public, or anyone else, and, therefore, we must look beyond the language of the statute. Upon consulting extratextual sources, especially the statute's legislative history, we are persuaded that the legislature intended for the "not in plain view" element of § 53a-189a (a) (1) to be viewed from the perspective of the public generally.
Before turning to our analysis, we set forth the essential principles that guide our interpretation of statutes. "[O]ur fundamental objective [in statutory construction] is to ascertain and give effect to the apparent intent of the legislature ...." (Internal quotation marks omitted.) Board of Education v. State Board of Education , 278 Conn. 326, 331, 898 A.2d 170 (2006). When we construe a statute, General Statutes § 1-2z directs us to ascertain its meaning "from the text of the statute itself and its relationship to other statutes." "If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered .... When a statute is not plain and unambiguous, we also look for interpretive **226 guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter ...." (Internal quotation marks omitted.) Rivers v. New Britain , 288 Conn. 1, 11, 950 A.2d 1247 (2008). "[O]ur case law is clear that ambiguity exists only if the statutory language at issue is susceptible to more than one plausible interpretation." (Internal quotation marks omitted.) Lackman v. McAnulty , 324 Conn. 277, 286, 151 A.3d 1271 (2016).
A
Textual Analysis
Applying these principles, we conclude, contrary to the Appellate Court and the trial court, that an examination of the text of the statute and our consideration of related statutory provisions do not yield a single, unambiguous meaning of the "not in plain view" element in § 53a-189a (a) (1).
1
We begin our search for the legislature's intended meaning by examining the statute itself. Section 53a-189a (a) provides in relevant part: "A person is guilty of voyeurism when, (1) with malice, such person knowingly photographs, films, videotapes or otherwise records the image of another person (A) without the knowledge and consent of such other person, (B) while such other person is not in plain view , and (C) under circumstances where such other person has a reasonable expectation of privacy ...." (Emphasis added.) General Statutes (Rev. to 2009) § 53a-189a (a). The statute thus generally criminalizes the malicious and nonconsensual recording of another person while "such other person is not in plain view," and under circumstances **227 where such person has a reasonable expectation of privacy. General Statutes (Rev. to 2009) § 53a-189a (a) (1). *1119 The "not in plain view" element presupposes that "such other person" is being viewed from a particular vantage point, but does not explicitly dictate whose vantage point must be considered. General Statutes (Rev. to 2009) § 53a-189a (a) (1). The statute itself refers to two individuals-the person recording and the person being recorded. It is doubtful that the statute refers to the plain view of the person being recorded because that would be absurd-the recorded person would always be in plain view of himself or herself-and neither party is advocating for this interpretation. The statutory language, on its face, could be interpreted to refer to the plain view of the person making the recording, as the defendant asserts. But the statute could also be read to refer to the view of the public generally, as the state argues. Also, the statute could refer to the plain view of any other person, meaning that the person being recorded must not be in the plain view of anyone else at the time of the recording to establish this element of the offense. Nothing in the statutory language expressly points to or excludes any of these latter three interpretations.
A closer look at the meaning of "plain view" does not resolve the ambiguity either. There is no statutory definition of "plain view" for us to consult. When we construe undefined statutory terms, General Statutes § 1-1 (a) directs us to use the "commonly approved usage" of the words at issue, or, if they are technical words that have "acquired a peculiar and appropriate meaning in the law," then they should be construed according to that technical meaning.
The term "plain view" has certainly obtained a technical meaning within jurisprudence concerning the fourth **228 amendment to the federal constitution and the law governing searches and seizures by government agents. An exception to the fourth amendment's warrant requirement permits police to seize, even in the absence of a warrant, any evidence or contraband in the "plain view" of a police officer. State v. Jones , 320 Conn. 22, 65-66, 128 A.3d 431 (2015). In the context of the fourth amendment, "plain view" connotes something readily observable and identifiable by the officer, without the aid of technological equipment not publicly available. See, e.g., Kyllo v. United States , 533 U.S. 27, 40, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001) (use of nonpublic thermal imaging equipment constitutes search). It also suggests that the officer must perceive the contraband from a place he has a lawful right to be without a warrant and through an activity he has a lawful right to conduct without a warrant-something is not in plain view if an officer has trespassed to perceive it. See, e.g., Florida v. Jardines , 569 U.S. 1, 133 S.Ct. 1409, 185 L.Ed.2d 495 (2013) (officer with police dog approaching and lingering at front door of residence was search). The limitations on the plain view doctrine protect those who have otherwise generally shielded themselves or their effects from public view from nevertheless being observed or intruded upon by the government using equipment not otherwise available to the public or through an unlawful search or seizure. In short, it helps ensure that police do not skirt the warrant requirement by performing searches with technologies or techniques that the public generally cannot employ.
Considerations at play in the fourth amendment context might help inform the meaning of plain view as used in § 52a-189a (a) (1). For example, a person might be "not in plain view" for the purposes of § 53a-189a (a) (1) if they are observable only through trespass, peeking over or *1120 under a privacy barrier, or the use of uncommon technological equipment. **229 Nevertheless, irrespective of whether and how the fourth amendment plain view doctrine might apply to § 53a-189a, we do not believe that it resolves the ambiguity we contend with about whose view must be considered when applying the statute. Although both the fourth amendment and § 53a-189a may be said to address privacy concerns, the fourth amendment plain view doctrine generally governs intrusions by government officers, whereas § 53a-189a relates to the conduct of individuals generally, not government agents. The fourth amendment plain view doctrine is necessarily applied from the perspective of a police officer, lawfully present on the scene, but neither party contends that the "not in plain view" element of § 53a-189a (a) (1) was intended to refer to the plain view of a police officer-an interpretation that would make little sense. The central considerations relating to the fourth amendment plain view doctrine-that something must be observed from a lawful location during lawful activity and without technology unavailable to the general public-could still be applied to § 53a-189a (a) (1) regardless of whether the relevant viewpoint is that of the person doing the recording, a member of the public generally, or anyone else.[3]
Because this technical fourth amendment meaning of "plain view," even if applied to § 53a-189a (a) (1), does not resolve the ambiguity before us, we also consider the common meaning of that phrase, as expressed in the dictionary. See, e.g., Middlebury v. Connecticut Siting Council , 326 Conn. 40, 49, 161 A.3d 537 (2017).
The dictionary definition provides some support for the state's position that the "not in plain view" element **230 of § 53a-189a (a) (1) refers to the view of the public, but does not entirely resolve the dispute. Webster's Third New International Dictionary (1961) defines "plain," in relevant context, as "free of obstacles" and "free of impediments to view: unobstructed," and it defines "view," in relevant context, as "the act of seeing or beholding ...." Other dictionaries provide similar definitions, supporting the conclusion that "in plain view" means something like clearly visible. See, e.g., Webster's II New College Dictionary (2001) (defining "plain" as "clearly evident," and "open and without pretense"); Webster's Eleventh New Collegiate Dictionary (2011) (defining plain as "free from duplicity or subtlety"). These definitions suggest that "plain," as an adjective modifying "view," describes how the viewing must occur, but does not tell us who must be doing the viewing. Put another way, these dictionary definitions suggest that the person being recorded must not be in "plain view" or not clearly visible, but they do not tell us to whom the victim must not be visible. Notably, however, at least one dictionary equates the meaning of "plain" with "public" in the context of viewing something. The Oxford English Dictionary (2d Ed. 1991) defines "plain" as, inter alia, "open to the elements or to general view; public. " (Emphasis added.) It stands to reason, based on this definition, that "not in plain view" might reasonably be interpreted to mean "not in public view." Ultimately, we do not believe, however, that resort to dictionaries alone resolves the question of how to interpret the phrase "not in plain view" in § 53a-189a (a) (1). *1121 2
Apart from the specific statutory provision at issue, we also must consider the meaning of "not in plain view" as used in other statutory provisions, but such a review similarly does not resolve the question of statutory interpretation before us. The defendant in the present **231 case is charged with violating subdivision (1) of § 53a-189a (a). But § 53a-189a (a) contains three other subdivisions providing alternative versions of the crime of voyeurism, each of which uses the phrase "not in plain view." General Statutes (Rev. to 2017) § 53a-189a (a) (2) through (4).[4] Like the subdivision at issue in the present case, none of the other subdivisions specifies whose view is at issue.
Applying the defendant's interpretation to at least one of the other subdivisions arguably could render it meaningless, or at least severely limit its scope. Specifically, General Statutes (Rev. to 2017) § 53a-189a (a) (3) provides that a person may be found guilty of voyeurism when, "with the intent to arouse or satisfy the sexual desire of such person, [he] commits simple trespass , as provided in section 53a-110a, and observes , in other than a casual or cursory manner, another person (A) without the knowledge or consent of such other person, (B) while such other person is inside a dwelling ... and not in plain view , and (C) under circumstances where such other person has a reasonable expectation of privacy ...." (Emphasis added.) General Statutes (Rev. to 2017) § 53a-189a (a) (3) thus not only requires that the defendant "observe" the victim, but that he do so while committing "simple trespass" and while the victim is "not in plain view."
Problems might arise if we were to apply the defendant's construction of "not in plain view" to General Statutes (Rev. to 2017) § 53a-189a (a) (3). If "not in **232 plain view" means not in plain view of the defendant, General Statutes (Rev. to 2017) § 53a-189a (a) (3) might require that the defendant "observe" the victim, but do so while she is "not in [his] plain view," a difficult feat. Of course, one might avoid this problem by overlaying fourth amendment principles on the meaning of "plain view," but that creates a different problem. General Statutes (Rev. to 2017) § 53a-189a (a) (3) not only requires that the defendant "observe" the victim, but that he do so while committing "simple trespass." Applying the fourth amendment meaning of "plain view" to this provision would require the defendant-like a law enforcement officer-to view the victim from a position he has no lawful right to occupy. State v. Brown , 279 Conn. 493, 520, 903 A.2d 169 (2006). This construction of the "not in plain view" element would render meaningless the separate requirement that the defendant must commit a simple trespass as defined by General Statutes § 53a-110a before his viewing of another may be considered criminal.[5] General Statutes (Rev. to 2017) § 53a-189a (a) (3). If we construed the terms used in this subdivision to avoid these problems, that might, *1122 in our view, unduly narrow the statute's scope in a way the legislature might not have intended.
Lastly, usage of the term "plain view" in other statutes sheds little additional light on the meaning of the "not in plain view" element of § 53a-189a (a) (1). The term "plain view" appears in nearly twenty other statutes,[6] in contexts ranging from election protocols and highway regulations to liquor permitting and human trafficking. See, e.g., General Statutes §§ 9-257, 12-476b, 30-54 and 54-234a. Examining those specific statutes does not, **233 however, entirely illuminate from whose perspective the "not in plain view" element must be considered, although some statutes indicate that the legislature has, at times, roughly equated the meaning of "plain view" with "public view."
For example, § 12-476b requires that vehicles trans-porting fuel must have the name of the "true owner or the lessee thereof printed in plain view on both sides of the vehicle in prominent and legible letters ...." (Emphasis added.) In this context, the usage implies that "in plain view" means in public view because it mandates displaying information for general observation by unspecified onlookers.
Other statutes suggest a similar meaning of "plain view" in the context of providing a notice to others. For instance, a permit for the sale of alcohol must be "framed and hung in plain view in a conspicuous place ...." General Statutes § 30-54. Operators of highway service plazas, hotels, motels, or inns must post notices offering services to victims of human trafficking "in plain view in a conspicuous location ...." General Statutes § 54-234a (a). Specialized policemen shall, when on duty, "wear in plain view a shield" bearing certain words indicating the type of policemen they are, such as state park police or railroad police. See, e.g., General Statutes §§ 8-44b (b), 23-18, 25-44, 29-19 (b) and 29-21 ; see also General Statutes § 7-313a (fire police officers, when performing their duties, "shall wear the badge of office in plain view of any observer"); General Statutes § 19a-905 (b) (any health-care provider "who provides direct patient care shall wear in plain view during ... working hours a photographic identification badge"); General Statutes §§ 22-139 (b) and 22-140 (b) (each licensed milk regulation board tester "shall post his license in plain view in the testing room in which he is employed," and each milk tester "shall carry upon his person or post his license in plain view in the **234 plant in which he is employed"); General Statutes § 26-206 (shellfish policemen, when on duty, "shall wear in plain view a badge bearing conspicuously the words 'Shellfish Policeman' "). The context in which these statutes use the term "plain view" indicates that they refer to the display of something (permit, notice, shield, badge, or license) in public view generally and not in the view of any one person in particular.
These statutes at least suggest that when the legislature uses the term "plain view," without specifying whose view, that term likely refers to a more general vantage point-the plain view of the public or of any potential observer-unless it explicitly states otherwise. That would lead us toward concluding that the legislature intended a more general viewpoint for the "not in plain view" element of § 53a-189a (a) (1), supporting the state's interpretation.
In other instances, however, the legislature has been more precise about whether it intends the relevant vantage point to be *1123 that of the public or of someone specific. For example, in title 9 of the General Statutes, governing elections, General Statutes § 9-308 provides that a canvass of returns "shall be made in plain view of the public. " (Emphasis added.) On the other hand, General Statutes § 9-257 provides that "[e]very part of the polling place shall be in plain view of the election officials. " (Emphasis added.)
Given the lack of consistency with which the legislature has specified the proper vantage point for judgment of whether something is in "plain view," we draw no controlling principle from these statutes that may be applied to resolve the ambiguity in the "not in plain view" element of § 53a-189a (a) (1).
The results of these textual tools of analysis, considered together, leave us convinced that, at the very least, the "not in plain view" element "is susceptible to more **235 than one plausible interpretation." (Internal quotation marks omitted.) Lackman v. McAnulty , supra, 324 Conn. at 286, 151 A.3d 1271. That is, we cannot conclude that "not in plain view" in § 53a-189a (a) (1) unambiguously refers to the plain view of the defendant, as opposed to the plain view of the public, or anyone else.
The Appellate Court reached a contrary conclusion, determining that the "not in plain view" element clearly and unambiguously referred only to the plain view of the defendant. It reached this conclusion after considering, among other things, the dictionary definition of "plain view," the fourth amendment meaning of "plain view," and the use of "plain view" in the statute at issue and in a related statute. State v. Panek , supra, 166 Conn. App. at 627, 631-32, 634, 145 A.3d 924. It concluded that each of these sources pointed to the defendant's interpretation.
But, upon our de novo examination of these same sources, we are persuaded that they at least support more than one reasonable interpretation, and some arguably provide greater support for the state's interpretation. We emphasize that our first purpose in reviewing these sources is not to select the best interpretation, but to determine whether, after examining the statute's text and related provisions, only one reasonable interpretation remains. See General Statutes § 1-2z. We therefore disagree with the Appellate Court's conclusion that these sources lead to one and only one meaning of the "not in plain view" element of § 53a-189a (a) (1).
Apart from the sources we have already considered, the defendant relies on other sources of statutory interpretation to advance a number of other arguments in support of his position that "not in plain view" must refer to the defendant's plain view.
First, the defendant claims that interpreting "not in plain view" to refer to the plain view of the public **236 would render superfluous the separate element of a "reasonable expectation of privacy" under § 53a-189a (a) (1) (C). Specifically, he reasons that requiring that a victim not be in "public view" is no different from requiring that the victim have a "reasonable expectation of privacy." If true, he contends, this interpretation would run afoul of our presumption that "the legislature did not intend to enact meaningless provisions" and that "[s]tatutes must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant ...." (Internal quotation marks omitted.) State v. Drupals , 306 Conn. 149, 159-60, 49 A.3d 962 (2012).
We disagree that the state's interpretation of the "not in plain view" element renders the "reasonable expectation of privacy" element entirely redundant. General Statutes (Rev. to 2009) § 53a-189a (a) (1).
*1124 We need not decide, in this case, the meaning of the "reasonable expectation of privacy" element. Rather, it suffices to acknowledge that, although whether a person is in public view may affect whether that person has a reasonable expectation of privacy, the two concepts are not coterminous. For example, it may be true that a person in public view generally will not have an expectation of privacy. But, depending on the circumstances, it does not follow that a person out of public view necessarily must hold a reasonable expectation of privacy. Thus, it is possible that, under the state's interpretation, the state could prove that the victim was out of the public view when recorded, but, nevertheless, fail to establish that the victim had a reasonable expectation of privacy at the time.[7]
**237 Second, the defendant also argues, and the trial court and the Appellate Court agreed, that the "not in plain view" element must be interpreted consistently with the ordinary meaning of the term "voyeurism," the name of the offense with which the defendant was charged. See State v. Panek , supra, 166 Conn. App. at 632-34, 145 A.3d 924. According to the defendant, "voyeurism" refers to the secretive or surreptitious viewing of another person, which suggests that the voyeur must be spying on someone who is not in his plain view.
For several reasons, we are not persuaded that the dictionary definition of "voyeurism" controls our interpretation of "not in plain view" as used in § 53a-189a (a) (1). First, we hesitate to rely on the dictionary definition of "voyeurism" to establish the meaning of the elements of that offense. The legislature, by enumerating the elements of an offense named "[v]oyeurism," has provided its own definition for the purpose of our criminal law. As used in this context, we find the dictionary definition of voyeurism less helpful in any attempt to define the contours of that offense. To be sure, "[i]t is well established that, when determining the meaning of a word, it is appropriate to look to the common understanding of the term as expressed in a dictionary." (Internal quotation marks omitted.) State v. Spillane , 255 Conn. 746, 755, 770 A.2d 898 (2001). "This precept, however, pertains primarily to the situation where no statutory definition is available." Id. The legislature is free to diverge from the dictionary definition when defining a term for its purposes. See, e.g., State v. Webster , 308 Conn. 43, 54, 60 A.3d 259 (2013) (noting that statutory definition of "sale," as used in statute prohibiting narcotics sales, "is substantially broader in scope than the common dictionary definition" [internal quotation marks omitted] ). Indeed, even if we assume that voyeurism historically may have referred to the act of viewing certain private activities, the legislature has **238 nevertheless expanded on that meaning in this statute to address modern technological developments by criminalizing the recording, not just the observation, of certain private activities. See General Statutes (Rev. to 2009) § 53a-189a (a) (person who "photographs, films, videotapes or otherwise records the image of another person" within purview of statute). Thus, even if the ordinary meaning of "voyeurism" is limited to secretly viewing someone, that meaning does not control our interpretation of how the legislature has defined that word in § 53a-189a. *1125 Second, even if the dictionary definition controlled, the definition of "voyeurism" does not refer solely to secretive viewing. For instance, Webster's Third New International Dictionary (1961) defines "voyeurism" as "the tendencies, act, or looking of a voyeur," and voyeur is defined as "one whose sexual desire is concentrated upon seeing sex organs and sexual acts," or "an unduly prying observer [usually] in search of sordid or scandalous sights." The first definition does not limit voyeurism to secretive viewing. Also, even if the second definition implies that the voyeur is viewing something in secret, neither definition requires that the voyeur must be viewing something not in his own plain sight; rather, the second definition more broadly implies that the voyeur is peering into something private from others generally-an understanding that could support the state's interpretation.
B
Extratextual Sources
Because we conclude that our consideration of the text of § 53a-189a and other statutory provisions does not yield a single, unambiguous interpretation of the "not in plain view" element in § 53a-189a (a) (1), we turn next to extratextual sources of the legislature's intent. This includes looking to the "legislative history **239 and circumstances surrounding [the statute's] enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter ...." (Internal quotation marks omitted.) Rivers v. New Britain , supra, 288 Conn. at 11, 950 A.2d 1247.
We find the legislative history most illuminating. During the Senate debate, the proponent of the bill, Senator Donald Williams, summarized the elements of the crime in his own words, clarifying the meaning of "not in plain view." As to that element, Senator Williams stated that, in order for a defendant to violate the statute, the victim must be "not in public view ...." (Emphasis added.) 42 S. Proc., Pt. 6, 1999 Sess., p. 2151. He further reinforced this meaning by referring to "an area" not in plain view, and "a place" not in public view, indicating that the focus of the statute is on whether the victim is exposed to the public's general view-not a specific person's view, such as the defendant's. Id., pp. 2149, 2151, remarks of Senator Donald Williams.
Similarly, during debate in the House of Representatives, the proponent of the bill, Representative Michael Lawlor, summarized the "not in plain view" element of the statute as meaning "inside a building or another structure ...." 42 H.R. Proc., Pt. 10, 1999 Sess., p. 3493. This suggests that the legislature intended "not in plain view" to mean not in public view because being inside a structure implies that a victim is generally shielded from the public's view. It is far less likely that Representative Lawlor intended "inside a building" to mean out of the defendant's plain view, who could potentially also be inside the same building. 42 H.R. Proc., supra, p. 3493.
Another exchange during the debate in the House of Representatives also demonstrates that the legislature did not intend "not in plain view" to mean not in plain **240 view of the defendant. Representative Hector Diaz asked Representative Lawlor whether a consensually recorded video of sexual relations would violate the statute. Id., p. 3504. Representative Lawlor clarified that it would not because the "statute would require that the original ... recording would have been recorded without the person's consent and where they had a reasonable expectation of privacy" pursuant *1126 to §§ 53a-189a (a) (1) (A) and (C). Id., p. 3505. He continued by saying that "if a couple, for example, videotapes their own sexual relations ... they wouldn't be violating this [statute ] because the initial taping, I'm assuming, was consensual, and it seems like the requirement is that [the video recording] would have had to have been without the consent of the party." (Emphasis added.) Id., p. 3509, remarks of Representative Michael Lawlor. In other words, Representative Lawlor clarified that there would be no violation under the hypothetical posed only because the "initial taping ... was consensual"-not because the sexual relations were consensual.[8] Id.
This excerpt of the legislative history undercuts any suggestion that the legislature intended "not in plain view" in § 53a-189a (a) (1) to refer to the view of the defendant. If Representative Lawlor contemplated that the statute would be violated in the hypothetical example where the video recording was nonconsensual, then a statutory requirement that the victim be "not in plain view" of the defendant would be nonsensical. It would be difficult, or well-nigh impossible, for two people to engage in sexual contact with each other without both **241 of them being in plain view of one another. Therefore, if Representative Lawlor, the proponent of the bill, recognized that this statute can be violated through the nonconsensual recording of sexual relations, "not in plain view" cannot refer to the plain view of the defendant. Rather, we agree with the state that the legislative history of § 53a-189a supports a conclusion that the legislature intended "not in plain view" to refer to the plain view of the public generally, meaning that a person must not be in a position where any member of the public, lawfully situated, could plainly view the person being recorded.
The defendant claims, however, that because he and the state offer "competing interpretations" of the statute, the issue should ultimately be resolved in his favor under the rule of lenity. He correctly states that, as a general rule, "[c]riminal statutes are not to be read more broadly than their language plainly requires and ambiguities are ordinarily to be resolved in favor of the defendant." (Internal quotation marks omitted.) State v. Kirk R. , 271 Conn. 499, 510, 857 A.2d 908 (2004).
We acknowledge that the statute is not perhaps the paradigm of drafting precision. As we have recognized in the past, however, "perfect precision is neither possible nor required" in valid statutory creation. (Internal quotation marks omitted.) Sweetman v. State Elections Enforcement Commission , 249 Conn. 296, 322, 732 A.2d 144 (1999). We further note that, in many instances, seemingly imprecise draftsmanship is "attributable to a desire not to nullify the purpose of the legislation by the use of specific terms which would afford loopholes through which many could escape." (Internal quotation marks omitted.) Id. When interpreting a statute, our goal remains to divine the legislature's intent. Any lack of perfection in the drawing of the statute does not persuade us that the defendant's preferred interpretation of "not in plain view" necessarily accords with **242 the legislature's intent. See id. (stating that imprecise language does not *1127 invalidate statute or render it vague in favor of defendant); see also Foley v. State Elections Enforcement Commission , 297 Conn. 764, 782-83, 2 A.3d 823 (2010) (court recognized that statute is not model of clarity, but arrived at most reasonable interpretation of language); In re Williams D. , 284 Conn. 305, 312, 933 A.2d 1147 (2007) (noting that statutory defects, such as internal inconsistencies, are not dispositive in favor of respondent-especially if consequences would clearly contravene broader purposes of statutory scheme).
In addition, the defendant's lenity argument fails to recognize that the rule of lenity applies only if other tools of statutory construction fail to confirm the meaning of ambiguous language. "It is well established that courts do not apply the rule of lenity unless a reasonable doubt persists about a statute's intended scope even after resort to the language and structure, legislative history, and motivating policies of the statute." (Internal quotation marks omitted.) State v. Victor O. , 320 Conn. 239, 258-59 n.22, 128 A.3d 940 (2016).
Here, for reasons we have explained, after an examination of the statutory language, its structure, and its legislative history, we do not conclude that a reasonable doubt persists about the intended scope of § 53a-189a (a) (1). Consequently, "[a]lthough we recognize the fundamental principle that criminal statutes are to be construed strictly, it is equally fundamental that the rule of strict construction does not require an interpretation which frustrates an evident legislative intent." (Internal quotation marks omitted.) In re Williams D. , supra, 284 Conn. at 320-21, 933 A.2d 1147.
II
As an alternative ground for affirmance, the defendant makes the claim, related to his lenity argument, **243 that the voyeurism statute is unconstitutionally vague, both on its face and as applied to his conduct.[9] He claims that, if the statute does not unambiguously refer to the plain view of the defendant, his right to fair notice will be violated because the statute has "no clear meaning." We disagree.
"A party attacking the constitutionality of a validly enacted statute bears the heavy burden of proving its unconstitutionality beyond a reasonable doubt." State v. Floyd , 217 Conn. 73, 79, 584 A.2d 1157 (1991). Moreover, we are obligated to "indulge in every presumption in favor of the statute's constitutionality ...." (Internal quotation marks omitted.) State v. DeFrancesco , 235 Conn. 426, 442, 668 A.2d 348 (1995).
"Under the requirements of due process of law mandated by our federal and state constitutions, a penal statute must be sufficiently definite to enable a person to know what conduct he must avoid." (Internal quotation marks omitted.) Id., at 443, 668 A.2d 348. One of the touchstones of vagueness is that people "of common intelligence must necessarily guess at its meaning and differ as to its application ...." (Internal quotation marks omitted.) State v. Fields , 302 Conn. 236, 260, 24 A.3d 1243 (2011). Our cases do not hold, however, that a statute is unconstitutionally vague merely because two parties have proffered plausible, but opposing, interpretations of a statute.
*1128 State v. Mattioli , 210 Conn. 573, 579, 556 A.2d 584 (1989) ("[h]onest disagreement about the interpretation of a statutory provision does not, however, make the statute ambiguous or vague").
**244 If this were true, any statute a court concludes is ambiguous would be rendered unconstitutional. See generally State v. Courchesne , 296 Conn. 622, 726, 998 A.2d 1 (2010) ("a statute is not unconstitutional merely because it is ambiguous or requires further investigation"). Rather, our case law makes clear that "the statute at issue need only give fair warning to those who are potentially subject to it." State v. DeFrancesco , supra, 235 Conn. at 444, 668 A.2d 348. To that end, "[t]he proscription of the activity ... need not be definite as to all aspects of its scope. A statute is not unconstitutional merely because a person must inquire further as to the precise reach of its prohibitions." Id., at 443, 668 A.2d 348. We are satisfied that § 53a-189a (a) (1) put the defendant on notice that recording the victim under these circumstances was conduct the legislature sought to proscribe.
The defendant's claim that § 53a-189a (a) (1) is vague as applied to his conduct warrants little comment. The defendant asserts, in agreement with the trial court and the Appellate Court, that the crime of voyeurism, as used in common parlance, only reaches scenarios in which victims believe they are alone. State v. Panek , supra, 166 Conn. App. at 624, 632-33, 145 A.3d 924. The defendant cites no legal authority for this contention, and we find no support for it in the statute's text or legislative history. In fact, the legislative history of the voyeurism statute manifests a concern about the nonconsensual recording of another person, which the statute prohibits regardless of whether the victim believes she is alone. See 42 H.R. Proc., supra, p. 3509, remarks of Representative Michael Lawlor. Moreover, as we have previously discussed, common parlance does not dictate our definition of voyeurism; rather, the General Assembly's requirements as enacted in § 53a-189a deter-mines our definition of voyeurism. That definition includes nonconsensual recordings of an unknowing **245 victim, even if the defendant makes them while in her immediate physical presence.
Because we conclude that the state may establish the "not in plain view" element of § 53a-189a (a) (1) based on the facts before us, the defendant's motion to dismiss should have been denied. The trial court therefore improperly dismissed the charges against the defendant on the basis raised in his motion to dismiss, and the Appellate Court improperly upheld that dismissal.
The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the judgments of the trial court and to remand the case to that court with direction to deny the defendant's motion to dismiss and for further proceedings.
In this opinion the other justices concurred.

General Statutes § 53a-189a was the subject of certain amendments since the events underlying this appeal. See Public Acts 2015, No. 15-213, § 1. All references to § 53a-189a are to the 2009 revision of the statute unless otherwise indicated.

The state also claimed that the "not in plain view" element of § 53a-189a (a) (1) referred to the perspective of the recording device and that, because the victim had no knowledge of the recording device, she was "not in plain view." The state does not pursue this argument on appeal to this court.

By this observation, we do not mean to hold that these considerations from the fourth amendment plain view doctrine apply to this statute; that question is not directly before us. We observe only that, even if § 53a-189a (a) (1) were interpreted through the lens of this doctrine, such an interpretation would not resolve the question facing us.

We note that, although subdivisions (3) and (4) were added to § 53a-189a (a) in 2015 after the events at issue in this appeal; see Public Acts 2015, No. 15-213, § 1; they are relevant to our analysis because "not in plain view" is used in each subdivision. See Thomas v. Dept. of Developmental Services , 297 Conn. 391, 404, 999 A.2d 682 (2010) ( "[w]e are ... guided ... by the presumption that the legislature, in amending or enacting statutes, always [is] presumed to have created a harmonious and consistent body of law" [internal quotation marks omitted] ).

The same difficulties arise when the Appellate Court's construction is applied to General Statutes § 53a-182 (a) (7), otherwise known as the "Peeping Tom" statute, which contains elements similar to those of General Statutes (Rev. to 2017) § 53a-189a (a) (3).

General Statutes §§ 7-313a, 8-44b, 9-257, 9-308, 12-476b, 19a-905, 22-139, 22-140, 23-18, 25-44, 26-206, 29-19, 29-21, 30-54, 46b-38b, 53a-182 and 54-234a.

Any potential overlap between the two elements therefore does not negatively affect the defendant. If the person being recorded is in plain view of the public, then the defendant cannot be convicted under the state's interpretation. Even if the state proves that the person recorded was out of public view, the defendant would still have the opportunity to argue that the victim nevertheless lacked a reasonable expectation of privacy under the circumstances.

The defendant focuses on only one part of this excerpt of the legislative debate, which could be read to suggest that the statute would not be violated if the victim was a coparticipant in the sexual relations. In context, however, the proponent of the bill was clear that it is mutual participation and consent to the creation of the images that bars application of the statute-not consent to the sexual relations. 42 H.R. Proc., supra, pp. 3505-3509, remarks of Representative Michael Lawlor.

The defendant also makes a passing argument that the voyeurism statute is unconstitutionally overbroad. Aside from his use of the term in a heading and quoting of the constitutional standards, the defendant fails to assert any substantive argument about why or how the statute is overbroad. We deem the argument abandoned. See, e.g., State v. Buhl , 321 Conn. 688, 724, 138 A.3d 868 (2016).