******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* JONATHAN W. CARNEY
## (AC 40512)

Keller, Bright and Beach, Js.

*Syllabus*

Pursuant to statute (§ 17a-566), a court, prior to sentencing a person who has been convicted of an offense for which he may be imprisoned in a certain maximum security correctional facility, and who appears to have psychiatric disabilities and to be dangerous to himself and to others, may order the Commissioner of Mental Health and Addiction Services to conduct an examination of such person and to report whether he should be committed to the diagnostic unit of Whiting Forensic Division, or should be sentenced in accordance with his conviction.

Pursuant further to statute (§ 17a-567), if the report submitted to the court pursuant to § 17a-566 recommends that the defendant should be sentenced in accordance with his conviction, the defendant shall be returned directly to the court for disposition.

Convicted, on a guilty plea, of the crime of murder, the defendant appealed to this court from the trial court's denial of his motion to correct an illegal sentence. Before the court accepted the defendant's guilty plea, pursuant to which the defendant agreed to a forty-two year prison sentence, defense counsel informed the court that the defendant had undergone a psychiatric evaluation in anticipation of asserting a possible extreme emotional disturbance defense. In canvassing the defendant, the court stated that it considered the results of that psychiatric evaluation and informed the defendant that he would be sentenced to forty-two years imprisonment, in accordance with his plea agreement. Prior to his sentencing date, the defendant attempted to commit suicide. Thereafter, defense counsel filed a motion for an evaluation pursuant to § 17a-566, and the court ordered the defendant to be sent to Whiting Forensic Division for an evaluation to determine whether he should serve his sentence at Whiting or at a correctional facility. The court adopted the recommendation of Whiting personnel and sentenced the defendant to the agreed on forty-two year sentence, to be served at a correctional facility. In denying the defendant's motion to correct an illegal sentence, the court concluded, inter alia, that there was no basis for the defendant's claim that the sentencing court had relied on inaccurate information in imposing the agreed on sentence. *Held*:

1. The trial court properly construed the applicable statutes and declined to hold that the receipt of information from Whiting personnel required the sentencing court to consider a more lenient sentence: the plain language of §§ 17a-566 and 17a-567 led this court to conclude that the purpose of those statutes is to guide a sentencing court in determining the appropriate place of confinement, and there was no statutory authority for Whiting personnel to make any recommendation as to the length of the defendant's sentence; moreover, there was no merit to the defendant's claim that the court was bound to apply certain human rights statutes and to consider rejecting the agreed on sentence as too harsh in light of the fact that the report and testimony of Whiting personnel indicated that the defendant was severely mentally ill, as the human rights statutes were not relevant to sentencing in the criminal justice system, and the sentencing court, in sentencing the defendant, considered the results of the earlier psychiatric evaluation, the substance of which was similar to the report and testimony of Whiting personnel.

2. The defendant could not prevail on his claim that, contrary to the trial court's conclusion, the sentencing court had relied on inaccurate information in sentencing him insofar as Whiting personnel testified that the defendant would receive adequate psychiatric treatment at a correctional facility when the defendant alleged that he had not received such treatment; such a claim was more appropriately asserted in a habeas action rather than in a motion to correct an illegal sentence, the statements of Whiting personnel were predictions rather than statements of fact, there was no record, including findings of fact and conclusions, on which to review the defendant's claim, and there was nothing to

indicate that the sentencing court materially relied on any information in the report or testimony of Whiting personnel in imposing the defendant's sentence.

Argued May 22—officially released September 4, 2018

*Procedural History*

Substitute information charging the defendant with the crimes of murder, felony murder, burglary in the first degree, criminal use of a weapon, carrying a pistol without a permit, burglary in the third degree, and larceny in the sixth degree, brought to the Superior Court in the judicial district of New Britain, where the defendant was presented to the court, *Handy, J.*, on a plea of guilty of murder; judgment in accordance with the plea; thereafter, the state entered a nolle prosequi as to the remaining charges; subsequently, the court, *D'Addabbo, J.*, denied the defendant's motion to correct illegal sentence, and the defendant appealed to this court. *Affirmed.*

*Jonathan W. Carney*, self-represented, the appellant (defendant).

*Lisa A. Riggione*, senior assistant state's attorney, with whom, on the brief, were *Brian Preleski*, state's attorney, and *Paul N. Rotiroti*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

BEACH, J. The defendant, Jonathan W. Carney, appeals from the judgment of the trial court denying his motion to correct an illegal sentence. The defendant claims that the court improperly (1) concluded that the sentencing court properly construed General Statutes § 17a-566 as limiting the Department of Mental Health and Addiction Services (DMHAS) to a recommendation as to the appropriate place of confinement only and, therefore, properly declined to consider information provided by Whiting Forensic Division (Whiting) at the § 17a-566 hearing when it imposed the sentence; and (2) failed to conclude that the sentencing court relied on inaccurate information provided by Whiting. We disagree and, accordingly, affirm the judgment of the trial court.

The following undisputed facts and procedural history are relevant to our resolution of the defendant's claims. They arise primarily from five separate proceedings: a plea proceeding on May 9, 2003; a June 27, 2003 hearing in which the court granted a continuance for sentencing; a July 18, 2003 hearing regarding the defendant's motion for a psychological evaluation; a September 5, 2003 hearing in which Whiting doctors testified regarding the defendant's need for further evaluation; and a January 16, 2004 sentencing hearing.

On May 9, 2003, the defendant pleaded guilty to murder in violation of General Statutes § 53a-54a. On that date, the court, *Handy, J.*, advised the defendant that the possible sentence for the crime was between twenty-five and sixty years.[1] The defendant's attorney stated that he had retained Donald Grayson, a psychiatrist, to conduct a psychiatric evaluation of the defendant in anticipation of a possible extreme emotional disturbance defense, and that he had discussed Grayson's report with the defendant. Before accepting the defendant's plea, the court canvassed the defendant on his waiver of the right to a trial, including his right to present an affirmative defense at trial. The court also indicated that it had reviewed Grayson's report and had considered the information contained therein.

Pursuant to the plea agreement, the defendant agreed to a forty-two year sentence. The court informed the defendant that he would be sentenced to forty-two years at the sentencing proceeding to be held at a later date, and the defendant affirmed that he understood. The court further informed the defendant that once the court accepted his plea, he could not take it back. The defendant again affirmed his understanding. The court found that the defendant's plea was "voluntary, made with understanding, [and] made with the assistance of competent and effective counsel." The court accepted the defendant's guilty plea, and a sentencing hearing was scheduled for June 27, 2003.

On June 26, 2003, the day before the scheduled sentencing, the defendant attempted suicide and was taken to a hospital. Sentencing was continued to July 18, 2003, because the defendant was in the hospital on June 27, 2003.

Following the defendant's attempted suicide, his attorney filed a motion for a psychiatric evaluation pursuant to § 17a-566.[2] On July 18, 2003, the court heard both parties regarding the defendant's motion. The state did not object, and the court ordered the defendant to be sent to Whiting for a presentence psychiatric evaluation in order to determine whether the defendant should serve his sentence in Whiting or at a Department of Correction (DOC) facility. The court indicated that the evaluation would not alter the defendant's agreed upon forty-two year sentence. The defendant did not object to the court's statement that the sole purpose of the psychiatric assessment was to provide guidance regarding the place of confinement.

On September 5, 2003, the court held a hearing regarding the Whiting recommendation. At the outset of the hearing, the court reiterated that the Whiting evaluation would not alter the length of the agreed upon forty-two year sentence. The court inquired as to whether either party disagreed with the court's understanding of the purpose of the inquiry, and both parties expressly stated that they did not disagree.

Eileen McAvoy, a psychologist who evaluated the defendant pursuant to §17a-566, testified as to her findings, and her written report was admitted as a full exhibit. In her report, she concluded that the defendant was in need of further evaluation at Whiting.[3]

On January 16, 2004, after the further evaluation, the court held a sentencing hearing at which Whiting personnel testified as to their recommendations. The Whiting report, including a psychiatric evaluation and Whiting "recommendations," was admitted as a full exhibit, under seal. Paul Amble, the chief forensic psychiatrist for the Connecticut Division of Forensic Services, and Sean Hart, a clinical psychologist, testified that the defendant should serve his sentence at a DOC facility. Both Amble and Hart further testified that they believed the DOC would be able to provide the defendant adequate psychiatric treatment. During summation, defense counsel raised concerns regarding the methods the Whiting personnel used in evaluating the defendant.[4] Ultimately, defense counsel argued that the defendant should serve his sentence at Whiting. The court adopted Whiting's recommendation and sentenced the defendant in accordance with the plea agreement to forty-two years imprisonment to be served at a DOC facility.

On May 4, 2016, pursuant to Practice Book § 43-22, the defendant, representing himself, filed a motion to

correct an illegal sentence. The defendant claimed that his sentence was imposed in an illegal manner because the sentencing court relied on inaccurate information and improperly concluded that the purpose of the § 17a-566 hearing was to determine only the place of the defendant's confinement. After a "sound basis" hearing pursuant to *State* v. *Casiano*, 282 Conn. 614, 922 A.2d 1065 (2007), the court did not appoint counsel to represent the defendant in connection with his motion to correct, and the defendant proceeded as a self-represented party.

On December 1, 2016, the trial court, *D'Addabbo, J.*, held a hearing on the defendant's motion to correct. The court concluded that the sentencing court properly had construed § 17a-566, and the court determined that there was no basis for the claim that the sentencing court had relied on inaccurate information in imposing the agreed upon sentence. Finally, the court dismissed for lack of jurisdiction the defendant's claim, as the court perceived it, that the defendant received inadequate care from the DOC. This appeal followed.

We begin with the relevant standard of review and legal principles. "We review the [trial] court's denial of [a] defendant's motion to correct [an illegal] sentence under the abuse of discretion standard of review. . . . In reviewing claims that the trial court abused its discretion, great weight is given to the trial court's decision and every reasonable presumption is given in favor of its correctness. . . . We will reverse the trial court's ruling only if it could not reasonably conclude as it did." (Citation omitted; internal quotation marks omitted.) *State* v. *Logan*, 160 Conn. App. 282, 287, 125 A.3d 581 (2015), cert. denied, 321 Conn. 906, 135 A.3d 279 (2016).

Pursuant to Connecticut law, "the jurisdiction of the sentencing court terminates once a defendant's sentence has begun, and, therefore, that court may no longer take any action affecting a defendant's sentence unless it expressly has been authorized to act." *Cobham* v. *Commissioner of Correction*, 258 Conn. 30, 37, 779 A.2d 80 (2001). Pursuant to Practice Book § 43-22, however, the sentencing court may correct an illegal sentence, illegal disposition, or a sentence imposed in an illegal manner. An illegal sentence is one that "exceeds the relevant statutory maximum limits, violates a defendant's right against double jeopardy, is ambiguous, or is internally contradictory." (Internal quotation marks omitted.) *State* v. *Parker*, 295 Conn. 825, 839, 992 A.2d 1103 (2010). A sentence imposed in an illegal manner is "within the relevant statutory limits but . . . imposed in a way which violates [a] defendant's right . . . to be addressed personally at sentencing and to speak in mitigation of punishment . . . or his right to be sentenced by a judge relying on accurate information or considerations solely in the record, or his right that the government keep its plea agreement promises

. . . ." (Internal quotation marks omitted.) Id. "[I]f the defendant cannot demonstrate that his motion to correct falls within the purview of [Practice Book] § 43-22, the court lacks jurisdiction to entertain it." (Internal quotation marks omitted.) *State* v. *Saunders*, 132 Conn. App. 268, 271, 50 A.3d 321 (2011), cert. denied, 303 Conn. 924, 34 A.3d 394 (2012).

I

The defendant claims that the trial court erred in agreeing with the sentencing court's construction and application of General Statutes §§ 17a-566 and 17a-567. As related previously in this opinion, the sentencing court stated that the statutory scheme related to placement of inmates and that the Whiting referral and resulting information would not be considered in the determination of the length of the sentence to be imposed.

In construing a statute, we "ascertain its meaning from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *State* v. *Panek*, 328 Conn. 219, 225, 177 A.3d 1113 (2018).

Section 17a-566 (a) provides that a sentencing court may refer certain convicted persons to Whiting for evaluation, and the initial Whiting examination may result in temporary commitment to Whiting for additional evaluation. Following the evaluation, a report is to be prepared in accordance with § 17a-566 (c). Section 17a-566 (d) provides that the report is to include "(1) [a] description of the nature of the examination; (2) a diagnosis of the mental condition of the defendant; (3) an opinion as to whether the diagnosis and prognosis demonstrate clearly that the defendant is actually dangerous to himself or others and requires custody, care and treatment at [Whiting]; and (4) a recommendation as to whether the defendant should be sentenced in accordance with the conviction, sentenced in accordance with the conviction and confined in the institute for custody, care and treatment, placed on probation by the court or placed on probation by the court with the requirement, as a condition to probation, that he receive outpatient psychiatric treatment."[5]

Section 17a-567 (a) prescribes the process to be followed after the report is filed in court. If the report recommends confinement in Whiting, a further hearing is required. If, however, "the report recommends that the defendant be sentenced in accordance with the conviction . . . the defendant shall be returned to court directly for disposition." General Statutes § 17a-567 (a).

The plain language of the statutes yields the conclusion that their direct purpose is to guide the sentencing court in the determination of the appropriate place of confinement. The statutory language provides a detailed procedure for making that determination: in the circumstances of the present case, either the convicted person ultimately is confined at Whiting or the person is returned to court for "disposition in accordance with the conviction." There is no statutory authority for Whiting to make any recommendation as to length of sentence, and we conclude that the court properly construed and applied the statutory authority.[6]

The defendant appears to make the further argument, however, that once the Whiting report was before the court and the Whiting personnel testified, even if a hearing was not statutorily required because the evaluators recommended a disposition not involving Whiting, the sentencing court was bound at least to consider the substance of the Whiting report and testimony in sentencing the defendant. The defendant's position apparently is twofold.

The defendant has constructed an intricate argument that, so far as we can tell, runs as follows. The Whiting report and testimony indicated that the defendant was severely mentally ill, even if not to the degree requiring confinement at Whiting, and specific diagnoses were made. In this situation, then, the court was required to apply various human rights statutes, most notably General Statutes § 46a-7,[7] and presumably was bound to consider rejecting the agreed upon sentence as too harsh in light of his mental illness.

We reject this position for two reasons. First, we are not persuaded that §§ 46a-7 et seq. have any relevance to sentencing in the criminal justice system, at least in the context of this case. The facilities expressly listed in the human rights statutes do not include correctional facilities; see General Statutes § 46a-11a (6);[8] and General Statutes §§ 18-96a and 17a-560 et seq. specifically govern the treatment of mentally ill persons within correctional facilities. Second, as noted by the trial court, prior to imposing the agreed upon sentence, the sentencing court reviewed the Grayson materials, which are consistent with and very similar to the Whiting materials. We conclude that the trial court did not err in declining to hold that the receipt of the Whiting information required consideration of a more lenient sentence.

## II

Finally, the defendant claims, somewhat paradoxically in light of his first claim, that the Whiting materials contained erroneous information such that the trial court erred in concluding that the sentencing court did not rely on inaccurate information when it imposed the defendant's sentence. We disagree.

The defendant argues that the Whiting personnel testified that he would receive adequate treatment at a DOC facility, and, he suggests, he has not received adequate treatment. As the trial court recognized, insofar as this is a claim regarding the conditions of confinement, it is a claim more appropriately brought in a habeas action. See, e.g., *State* v. *Anderson*, 319 Conn. 288, 299, 127 A.3d 100 (2016) ("if [the defendant] believes that the mental health treatment he is receiving while in the custody of the Commissioner of Correction is . . . inadequate, [his remedy] is . . . an expedited petition for a writ of habeas corpus challenging the conditions of his confinement"); see also General Statutes § 52-466 (a) (2). The statements of Whiting personnel were predictions rather than statements of fact, and, in any event, there is no record, including findings of fact and conclusions, on which to review the claim.

Finally, as noted by the trial court, there is nothing to indicate that the sentencing court materially relied on any information in the Whiting report or testimony in imposing the sentence. See *State* v. *Parker*, supra, 295 Conn. 843 ("A defendant [cannot] . . . merely alleg[e] . . . factual inaccuracies or inappropriate information. . . . [He] must show that the information was materially inaccurate and that the judge relied on that information." [Citations omitted; emphasis omitted; internal quotation marks omitted.]). What is clear is that the sentencing court, having recognized the likelihood of mental illness, took appropriate statutory measures and ultimately accepted the plea agreement of the parties.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] "The Court: And the penalties under [§] 53a-54a are twenty-four years to life. That's the statute. Right, twenty-five years to sixty years, which is life."

[2] General Statutes § 17a-566 provides in relevant part: "(a) Except as provided in section 17a-574 any court prior to sentencing a person convicted of an offense for which the penalty may be imprisonment in the Connecticut Correctional Institution at Somers . . . may if it appears to the court that such person has psychiatric disabilities and is dangerous to himself or others, upon its own motion or upon request of any of the persons enumerated in subsection (b) of this section and a subsequent finding that such request is justified, order the commissioner to conduct an examination of the convicted defendant by qualified personnel of the division. Upon completion of such examination the examiner shall report in writing to the court. Such report shall indicate whether the convicted defendant should be committed to the diagnostic unit of the division for additional examination or should be sentenced in accordance with the conviction. . . . (b) The request for such examination may be made by the state's attorney or assistant state's attorney who prosecuted the defendant for an offense specified in this section, or by the defendant or his attorney in his behalf."

[3] Pursuant to § 17a-566 (a), "[i]f the report recommends additional examination at the diagnostic unit, the court may, after a hearing, order the convicted defendant committed to the diagnostic unit of the division for a period not to exceed sixty days, except as provided in section 17a-567 provided the hearing may be waived by the defendant."

[4] The court disagreed with defense counsel's criticisms regarding the methods Whiting personnel used in assessing the defendant.

[5] Because the defendant stood convicted of murder, he was not eligible for the options that included probation. See General Statutes § 53a-29 (a).

[6] The defendant expressly waived any position to the contrary:

"The Court: I want to reiterate for the record this in no way affects the agreed [upon] sentence, which is going to be a sentence of forty-two years to serve. The only analysis that is being completed at this point in time is whether or not that sentence will be served in the general population in the [DOC] or will be served either a portion or all of at . . . Whiting . . . .

"Does either the state or defense disagree with that analysis?

"[The Prosecutor:] No, Your Honor.

"[Defense Counsel:] No, Your Honor."

[7] General Statutes § 46a-7 provides: "It is hereby found that the state of Connecticut has a special responsibility for the care, treatment, education, rehabilitation of and advocacy for its disabled citizens. Frequently the disabled are not aware of services or are unable to gain access to the appropriate facilities or services. It is hereby the declared policy of the state to provide for coordination of services for the disabled among the various agencies of the state charged with the responsibility for the care, treatment, education and rehabilitation of the disabled."

[8] General Statutes § 46a-11a (6) defines "facility" as "any public or private hospital, nursing home facility, residential care home, training school, regional facility, group home, community companion home, school or other program serving persons with intellectual disability . . . ."