******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ZARA LACKMAN ET AL. *v.* SAMANTHA
HUNT MCANULTY ET AL.
(SC 19668)

Palmer, Zarella, Eveleigh, McDonald and Robinson, Js.

*Argued October 14—officially released December 28, 2016\**

*Bruce S. Beck*, for the appellants-cross appellees (plaintiffs).

*Stephen G. Walko*, with whom were *Andrea C. Sisca* and, on the brief, *Julia E. Braun*, for the appellees-cross appellants (named defendant et al.).

*Opinion*

ROBINSON, J. In this case, we consider whether a grantor's failure to record a separate document limiting his powers " 'as trustee' " in accordance with General Statutes § 47-20,[1] when that grantor quitclaimed real property to himself as trustee, has the effect of nullifying the transfer of that property to the trust corpus, thereby allowing that grantor, as an individual, subsequently to devise that property through his will. The plaintiffs, Zara Lackman and Dylan Hunt, appeal[2] from the trial court's award of summary judgment in favor of the defendants,[3] who are beneficiaries of a trust settled by the decedent, Hugh I. Hunt. On appeal, the plaintiffs claim that the trial court improperly determined that the phrase "otherwise dispose of" within § 47-20 does not include a specific devise in a will. The plaintiffs argue, therefore, that the decedent's failure to record a separate document limiting his powers as trustee when he quitclaimed a certain parcel of real property to himself as trustee subsequently allowed the decedent to devise the property to the plaintiffs in his will. We disagree with the plaintiffs, and conclude that § 47-20 does not apply in this case because it protects only the interests of third parties who obtain property by means of a conveyance from a grantor who had received that property as trustee in the first instance. Because § 47-20 did not nullify the decedent's quitclaim deed to himself as trustee, the property was a trust asset, and the specific devise in the decedent's will adeemed. Accordingly, we affirm the judgment of the trial court.[4]

The record reveals the following facts and procedural history. On December 8, 1994, the decedent became the sole owner of the property, which is located at 6 North Street in the town of Goshen. On October 21, 1999, the decedent settled an inter vivos trust. The trust was revocable, and the decedent amended it on three separate occasions. In the first amendment, made on March 7, 2003, the decedent removed his daughter, Robyn Hunt Vogel as trustee, leaving himself as sole trustee, and funded the trust with $10 "together with any property added to the trust estate." This amendment also included a provision transferring the decedent's interest in the property at his death equally to his daughters, Alexandra A. Armitage and Samantha Hunt McAnulty. On June 30, 2004, the decedent amended the trust for a second time. Through that second amendment, the decedent eliminated, inter alia, the provision concerning the property in the previous amendment and replaced it with a more generalized provision distributing the remaining trust corpus equally to all of his daughters. The decedent also added a provision in the second amendment expressing his specific intent not to provide a distribution for his son, Hugh Hunt III. On February 24, 2006, the decedent made a third and final amendment to the trust, in which he,

inter alia, equalized the trust distribution among all of his children, including his son.

Shortly after the second amendment, on July 8, 2004, the decedent executed a quitclaim deed of the property to himself as trustee, placing the property into the trust corpus. The quitclaim deed then was recorded on the Goshen land records. However, no document specifying or restricting his powers as trustee ever was recorded. As the trial court noted, "[a]fter deeding the property to himself as trustee, the decedent never amended the trust to exclude the property, never conveyed the property out of the trust, and never revoked the trust." Subsequently, in 2011, the decedent executed a will through which he purported to devise the property to the plaintiffs and their father, Hugh I. Hunt III. In 2013, the decedent passed away. McAnulty, acting as the executrix of the decedent's estate, did not distribute the property to the plaintiffs because counsel advised her that the property remained in the trust, outside of the probate estate, and therefore could not have been devised through the will.

The plaintiffs then brought this action against the defendants seeking, inter alia, a declaratory judgment determining, pursuant to General Statutes § 47-31, the rights and ownership interests of the defendants in the property.[5] The defendants also filed a counterclaim that sought judgment, pursuant to § 47-31, dismissing the plaintiffs' claims to the property and quieting title in favor of McAnulty and Katherine Hunt McNeil as successor trustees. Thereafter, the defendants moved for summary judgment, claiming that the property remained a trust asset at the time of the decedent's death and, as such, never became part of the decedent's probate estate. In response, the plaintiffs filed a cross motion for summary judgment claiming that, pursuant to § 47-20, the failure to record a separate, duly executed document setting forth the powers of the grantee rendered the quitclaim deed a nullity and, as such, allowed the decedent to dispose of the property through his will. On October 6, 2015, the trial court issued the operative memorandum of decision,[6] dismissing, inter alia, the plaintiffs' motion for summary judgment, and granting the defendants' motion for summary judgment as to count one of the complaint.[7]

In its memorandum of decision, the trial court applied General Statutes § 1-2z to its analysis of § 47-20. In a thorough textual analysis, the trial court determined that the legislature's use of the word "such" to modify the words "real estate" and "interest" in the second sentence, required it to read the two sentences of § 47-20 together. The trial court then determined that the dictionary definition of "dispose of" encompassed both a permanent assignment and a more temporary designation. Although those two conflicting meanings could lead to ambiguity, the trial court reasoned that, when

read in the context of the remainder of § 47-20, the statute clearly and unambiguously indicates that the legislature intended the phrase "dispose of" only to include permanent transfers of real property. The court ultimately concluded that the phrase "otherwise dispose of" as used in § 47-20, plainly and unambiguously did not include devising property through a will. Accordingly, the trial court granted the defendants' motion for summary judgment and quieted title to the property in their favor. The plaintiffs' appeal followed.

On appeal, the plaintiffs claim that the trial court improperly interpreted § 47-20. Specifically, the plaintiffs assert that the phrase "dispose of" within § 47-20 has a well recognized meaning under Connecticut law that includes devises in wills. Additionally, the plaintiffs contend that the phrase "or otherwise" is meant to be read as broadly inclusive, and so, taken together with the phrase, "dispose of," § 47-20 plainly and unambiguously includes will devises. Thus, according to the plaintiffs' view of § 47-20, based in part on this court's decision in *Benassi* v. *Harris*, 147 Conn. 451, 162 A.2d 521 (1960), the property never became part of the trust corpus because the decedent failed to record a separate instrument limiting his powers as trustee, thereby rendering the term "trustee" in the quitclaim deed without legal effect, leaving the decedent free to dispose of the property as if he had continued to hold it as an individual. Finally, the plaintiffs contend that the second sentence of § 47-20 does not limit the first sentence's applicability only to permanent transfers, in that the two sentences govern the rights of two different constituencies, namely, the rights of the grantee as trustee and the rights of a transferee receiving property from such grantee, respectively.

In response, the defendants initially contend that § 47-20 does not apply to the question presented, as it only applies when there is a transfer of real estate from a grantee, as trustee, to a third party. The defendants further argue that the phrase "otherwise dispose of" within § 47-20 does not include a will devise because the plaintiffs erroneously assume that the occasional colloquial use of the term "disposition" to describe leaving property in a will must also include will transfers. The defendants contend that a fee interest in the property never transferred to the plaintiffs because a will devise is not a transfer of interest in real property, but is rather a statement of a future intent to transfer and, as such, no interest transferred prior to the decedent's death. In contrast, however, the defendants observe that the transfer of property from a grantor to a trustee is a present transfer of interest because it conveys legal title to the trustee with the beneficial interest in the property going to the beneficiaries of the trust. We agree with the defendants, and conclude that the plain and unambiguous language of § 47-20 does not apply in the present case, which does not involve a subsequent

transfer of the property of the grantee "as trustee" to a third party.[8]

Whether § 47-20 applies to the facts of this case presents a question of statutory construction over which we exercise plenary review. *Gonzalez* v. *O & G Industries, Inc.*, 322 Conn. 291, 302, 140 A.3d 950 (2016). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning . . . § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) Id., 302–303. Significantly, "our case law is clear that ambiguity exists only if the statutory language at issue is susceptible to more than one plausible interpretation." *State* v. *Orr*, 291 Conn. 642, 654, 969 A.2d 750 (2009).

In accordance with § 1-2z, we begin our analysis with the text of the statute. Section 47-20 provides in relevant part: "The word 'trustee' or 'agent', or the words 'as trustee', or words of similar meaning, following the name of the grantee in a duly executed and recorded instrument which conveys, transfers or assigns real estate or any interest therein . . . do not, in the absence of a separate duly executed and recorded instrument defining the powers of the grantee, affect the right of the grantee to sell, mortgage or otherwise dispose of the real estate or interest therein in the same manner as if those words had not been used. No person to whom such real estate or interest therein has been transferred or mortgaged by such grantee is liable for the claim of any undisclosed beneficiary or principal or for the application of any money which may have been paid by such person therefor." When read in isolation, the first sentence, as viewed by the plaintiffs, appears to describe the precise factual scenario presently before us. Here, we have a grantor, the decedent, who quitclaimed the property to himself, as trustee, without recording a separate document defining his duties as trustee. Reading just the first sentence suggests that the plaintiffs' interpretation is correct, and that here, because the decedent failed to execute a

separate document limiting his powers as trustee, that he was free to dispose of the property as if he owned it as an individual.

We do not, however, read the first sentence of § 47-20 in isolation. "[I]t is a basic tenet of statutory construction that [w]e construe a statute as a whole and read its subsections concurrently in order to reach a reasonable overall interpretation." (Emphasis omitted; internal quotation marks omitted.) *Thomas* v. *Dept. of Developmental Services*, 297 Conn. 391, 403–404, 999 A.2d 682 (2010). Importantly, "[l]egislative intent is not to be found in an isolated sentence; the whole statute must be considered." (Internal quotation marks omitted.) *Historic District Commission* v. *Hall*, 282 Conn. 672, 684, 923 A.2d 726 (2007). The second sentence focuses on eliminating a third-party grantee's liability surrounding a transfer of "such real estate or interest therein" based on undisclosed beneficiaries. General Statutes § 47-20. As the statute does not define the word "such," in accordance with General Statutes § 1-1 (a), we look to the common understanding expressed in dictionaries in order to afford the term its ordinary meaning. See, e.g., *Standard Oil of Connecticut, Inc.* v. *Administrator, Unemployment Compensation Act*, 320 Conn. 611, 645, 134 A.3d 581 (2016). "The word 'such' has been construed as an adjective referring back to and identifying something previously spoken of; the word naturally, by grammatical usage, refers to the last antecedent. . . . The accepted dictionary definitions of 'such' include 'having a quality already or just specified,' 'previously characterized or specified,' and 'aforementioned.' " (Citations omitted.) *LaProvidenza* v. *State Employees' Retirement Commission*, 178 Conn. 23, 27, 420 A.2d 905 (1979), quoting Webster's Third New International Dictionary (1971). Mindful of the dictionary definition of the term "such," the defendants' contention that the second sentence of § 47-20, through the use of the phrases "such real estate or interest therein" and "such grantee," limits the scope of the first sentence.

The second sentence of § 47-20 focuses on eliminating liability surrounding a transfer of "such real estate or interest therein" based on the claims of potential beneficiaries to the property, undisclosed to the transferee. "Such real estate or interest therein" refers back to the property transferred from a grantor to another person "as trustee," as set forth in the first sentence of § 47-20. Thus, when read as a whole, § 47-20 describes two separate conveyances of the same property: (1) from the original grantor to a grantee "as trustee," and (2) from that trustee to a third-party grantee. Section 47-20 therefore provides protection to a third party grantee in the second conveyance in the event of subsequent claims to the property from undisclosed beneficiaries. Put simply, without a second conveyance of property to a third-party grantee, § 47-20 does not apply.

In contending that the decedent's failure to record a separate instrument restricting his powers as trustee nullified the transfer of the property to the trust, the plaintiffs, however, rely on this court's decision in *Benassi* v. *Harris*, supra, 147 Conn. 457, for the proposition that, pursuant to § 47-20, in the absence of such an instrument, the use of the word "trustee" in the decedent's quitclaim deed is a nullity. We disagree. As the trial court aptly noted in its memorandum of decision, *Benassi* is readily distinguishable from the situation before us and, particularly, buttresses our interpretation that § 47-20 applies only to protect the interest of third parties who have received their interest via a second conveyance of property from a grantor who received his interest as a trustee. In *Benassi*, two conveyances of property occurred. Id., 453–54. First, the plaintiff conveyed the property to a developer as a trustee. Id. Second, the developer, purporting to act as a trustee of the property for the benefit of his own existing corporations, conveyed the property to a third-party grantee, namely, the defendants, who were his existing corporations' bankruptcy trustees.[9] Id., 454. This court held that the defendants could not be required to perform the contract between the plaintiff and the developer or to pay damages to the plaintiff, noting, in part, that use of the word " 'trustee' " in the first conveyance "was a nullity . . . ." Id., 457. Thus, pursuant to § 47-20, the defendants were protected from certain claims made by the plaintiff. Id.

Here, unlike in *Benassi*, we do not have a second conveyance of the property to a third-party grantee that would warrant protection under § 47-20. We have just one conveyance of the property—from the decedent to himself as trustee for the benefit of his children. The decedent, "as trustee," never purported to make another transfer of the property. Accordingly, we conclude that § 47-20 is clear and unambiguous in that it does not apply to the present case.[10]

Having concluded that § 47-20 does not apply, we must determine whether the property remained within the trust corpus or passed through probate upon the decedent's death. The decedent, through a quitclaim deed conveyed to the grantee, here, himself as trustee, his fee simple interest in the property, and through the words "as trustee," placed the property into the trust corpus. See *Socha* v. *Bordeau*, 277 Conn. 579, 588 n.7, 893 A.2d 422 (2006); *Hansen* v. *Norton*, 172 Conn. 292, 295–96, 374 A.2d 230 (1977); Restatement (Second), Trusts § 100 (1959). Upon transfer of the property to himself as trustee, the decedent, as an individual, no longer had an interest in the property. Rather, the decedent, as trustee, held legal title to the property, and the defendants, as beneficiaries of the trust, held the beneficial interest in the property. See *Naier* v. *Beckenstein*, 131 Conn. App. 638, 646–47, 27 A.3d 104, cert.

denied, 303 Conn. 910, 32 A.3d 963 (2011). Put simply, the decedent, as an individual, no longer had any interest in the property that he could devise in a will.[11] As such, although the decedent specifically devised the property through his will, because he did not own the property at the time of his death, the specific devise adeemed and, therefore, the plaintiffs took nothing as devisees. See R. Folsom & L. Beck, Revocable Trusts and Trust Administration in Connecticut (2016) § 17:7. Thus, the trial court properly determined that, upon the decedent's death, the property remained within the trust corpus, and the interest in the property transferred to successor trustees to convey to the trust beneficiaries, namely, the defendants.

The judgment is affirmed with respect to the plaintiffs' appeal. The defendants' cross appeal is dismissed.

In this opinion the other justices concurred.

* December 28, 2016, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] General Statutes § 47-20 provides in relevant part: "The word 'trustee' or 'agent', or the words 'as trustee', or words of similar meaning, following the name of the grantee in a duly executed and recorded instrument which conveys, transfers or assigns real estate or any interest therein . . . do not, in the absence of a separate duly executed and recorded instrument defining the powers of the grantee, affect the right of the grantee to sell, mortgage or otherwise dispose of the real estate or interest therein in the same manner as if those words had not been used. No person to whom such real estate or interest therein has been transferred or mortgaged by such grantee is liable for the claim of any undisclosed beneficiary or principal or for the application of any money which may have been paid by such person therefor."

[2] The plaintiffs appealed to the Appellate Court from the judgment of the trial court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[3] References to the defendants in this opinion include the following individuals: Alexandra A. Armitage, Christina Lona Hunt, Samantha Hunt McAnulty, Katherine Hunt McNeil, Robyn Hunt Vogel, and Jacqulyn Hunt Wicklund.

We note that the complaint in the present case also named the following additional defendants: the plaintiffs' father, Hugh I. Hunt III; an attorney, Peter V. Reis, Jr.; and a law firm, Sullivan, Reis, Sanchy & Perlotto, LLC. The claims against these additional defendants are not, however, presently at issue. See footnote 5 of this opinion.

[4] We note that, in light of this conclusion, we need not address the issues raised in the defendants' cross appeal. See footnote 8 of this opinion.

[5] In count one of the complaint, the plaintiffs sought a declaratory judgment determining their ownership interest in the property. In count two, the plaintiffs alleged a breach of duty of care against McAnulty, in her position as the executrix of the decedent's estate, and also against the attorney, Peter V. Reis, Jr., and the law firm, Sullivan, Reis, Sanchy & Perlotto, LLC, that had advised McAnulty not to transfer interest in the property to the plaintiffs. Count two of the complaint is not, however, at issue in this case and, therefore, we need not consider it further.

[6] The court initially issued a memorandum of decision on May 26, 2015. After the plaintiffs successfully moved for reconsideration, the court revised its analysis of the issues, but ultimately came to the same conclusion. As such, the October 6, 2015 memorandum of decision "supersede[d] and clarifie[d] the May 26, 2015 memorandum of decision."

[7] We note that the trial court also denied the plaintiffs' cross motion for summary judgment as to both counts one and two. See footnote 5 of this opinion.

[8] In support of their motion to dismiss, the defendants filed two affidavits, including one from Professor Jeffrey Cooper, as a legal expert in trusts and estates. In response, the plaintiffs filed a motion to strike Cooper's affidavit. Cooper then submitted a revised affidavit, in response to which the plaintiffs filed a second motion to strike. The trial court granted the plaintiffs' second

motion to strike Cooper's affidavit on the ground that it expressed an opinion on the ultimate legal issue, which was the court's prerogative, rather than that of the expert witness. The defendants have filed a cross appeal to challenge the trial court's decision with respect to the issue of the admissibility of Cooper's affidavit. We note that, because the defendants were not aggrieved by the judgment of the trial court, this claim is not the proper subject of a cross appeal. See *Erickson* v. *Erickson*, 246 Conn. 359, 370 n.9, 716 A.2d 92 (1998). Moreover, because we affirm the trial court's award of summary judgment in favor of the defendants, we need not consider whether to address the issues presented in the defendants' cross appeal as an adverse ruling. See id.; see also Practice Book § 63-4 (a) (1) (B).

[9] In *Benassi*, the plaintiff conveyed property to the developer, "as trustee," pursuant to a written agreement. *Benassi* v. *Harris*, supra, 147 Conn. 453. The parties recorded the deeds and the agreement, which provided that the developer was to build homes on two lots and convey them back to the plaintiff. Id., 453–54. The parties also agreed that the developer would create a new corporation for the subdivision, rather than convey this property to one of his existing corporations. Id., 453.

The developer never performed his duties under the agreement by seeking approval for subdivision of the property or by creating a new corporation to hold the plaintiff's property. Id., 454. Rather, his existing corporations faced bankruptcy, so he deeded the property to the defendants. Id. To do so, the developer added language to this second conveyance purporting to state that he had been acting as trustee for the benefit of his existing corporations in the original conveyance. Id. The plaintiff brought an action to invalidate his original conveyance to the developer, as well as the subsequent conveyance from the developer to the defendants. Id., 452–53.

In ruling for the plaintiff, this court relied on § 354 of the Restatement of Contracts to determine whether the plaintiff was entitled to an equitable remedy for specific restitution and retransfer of property based on the unavailability of other adequate remedies. *Benassi* v. *Harris*, supra, 147 Conn. 456. In considering whether the plaintiff had another adequate remedy, the court relied on § 47-20 to hold that the use of the word " 'trustee' " in the first conveyance was a nullity and could not make the developer ipso facto a trustee. Id., 457. The defendants were not parties to the developer's agreement with the plaintiff, and as such, could not be required specifically to perform the contract or pay damages for its breach. Accordingly, the only adequate remedy available to the plaintiff was the cancellation of his deed to the developer, as trustee, and the developer's subsequent deed to the defendants. Id.

[10] To the extent that any ambiguity remains, the only recorded legislative history for § 47-20 supports this interpretation that it is intended to protect third parties obtaining property from a trustee. See *State* v. *Rodriguez-Roman*, 297 Conn. 66, 78, 3 A.3d 783 (2010). When discussing the purpose of the bill in the Senate, Senator T. Clark Hull stated the following: "Mr. President, this is a technical bill . . . to clarify language in a long existing statute, to make it clear that when title is taken by a person as trustee, agent or other similar meanings, it does not require a person thereafter dealing with that title to check into the trust or agency power to that deed." 13 S. Proc., Pt. 1, 1969 Sess., p. 439.

These remarks reveal that the legislature did not intend for § 47-20 to remove corpus from the trust based on a grantor's failure to record a separate document limiting his or her powers as trustee with respect to that corpus. Rather, based on these remarks, § 47-20 was enacted to protect third-party grantees in a second conveyance of property. Specifically, in the first conveyance of property, a grantor conveys land to a grantee, as trustee. In the second conveyance, that grantee transfers the property to a third party. Section 47-20 provides protection for third-party grantees in a second conveyance who receive title to property from a " 'trustee, agent,' " or from a person with a title of similar meaning. Id., remarks of Senator Senator T. Clark Hull.

[11] At oral argument before this court, a question was raised about whether the decedent's second trust amendment, which eliminated the specific reference to the property and replaced it with a more generalized provision that included the entire remaining trust corpus, effectively removed the property from the trust. Although the trust was revocable, the record is devoid of any indication that the decedent amended the trust specifically to exclude the property, conveyed the property out of the trust, or revoked the trust. Thus, we agree with the trial court's conclusion that it was undisputed that, "[a]fter deeding the property to himself as trustee, the decedent never

amended the trust to exclude the property, never conveyed the property out of the trust, and never revoked the trust."

It is of note that, in the decedent's second amendment to the trust, he eliminated the provision concerning the property and replaced it with a new, more generalized provision that stated that all of the remaining trust corpus would be distributed equally to his daughters. Less than two weeks after the second amendment, the decedent quitclaimed the property to himself, as trustee, placing it within the trust corpus. As such, the generalized language encompassed the property, as well as any other trust corpus remaining in the trust, upon the decedent's death.