D'AURIA, J.
**566 *693 In this appeal from the Compensation Review Board, we consider the extent of an employer's right to a credit against its obligation to pay workers' compensation benefits for an injured employee when that employee has recovered damages from a third-party tortfeasor who caused the employee's injuries. When an employee is injured in a work related accident, the Workers' Compensation Act (act), General Statutes § 31-275 et seq., bars the employee from bringing an action for damages against the employer but, also, requires employers to pay certain benefits to the injured employee. These benefits can include covering the employee's medical expenses or providing compensation for disabilities resulting from the injury. See General Statutes § 31-275 (4).[1]
When the employee's injury is caused by a third-party tortfeasor-someone other than the employee or the employer or its agents-the act allows either the employer or the employee to bring an action in tort to recover damages from the third party. General Statutes § 31-293 (a) ; Libby v. Goodwin Pontiac-GMC Truck, Inc. , 241 Conn. 170, 174, 695 A.2d 1036 (1997). If damages are recovered in the third-party action, § 31-293 (a) requires that, after deducting attorney's fees and litigation expenses, the employer must be reimbursed **567 from the net proceeds of the action for any workers' compensation benefits the employer has paid to or on behalf of the injured employee. General Statutes § 31-293 (a). Any remaining proceeds from the third-party action must be "assessed in favor of the injured employee." General Statutes § 31-293 (a).
After the resolution of the third-party action, the employer remains liable to pay for any later arising workers' compensation benefits due the employee, but our case law interpreting § 31-293 (a) establishes that this subsection implicitly affords the employer a setoff, or a credit, against any later arising benefits in the amount of any proceeds the employee received in the action against the third party. See, e.g., Enquist v. General Datacom , 218 Conn. 19, 20-21, 587 A.2d 1029 (1991). This credit is often referred to as a " 'moratorium' " against future payments. Id., at 27 n.7, 587 A.2d 1029 ; see also R. Carter et al., 19 Connecticut Practice Series: Workers' Compensation (Supp. 2017) § 15:6, p. 375. The moratorium remains in place until the workers' compensation benefits due after the judgment exceed the amount the employee received from the action against the third party. Enquist v. General Datacom , supra, at 25-26, 587 A.2d 1029. Once the employee's later arising workers' compensation benefits exceed the amount of the employee's recovery, the employer again becomes obligated to pay the employee's benefits. See id.
In 2011, the legislature amended § 31-293 (a) to allow the employee, if the employee initiated the third-party action, to keep one third of the net proceeds due to the employer from that action, regardless of how much the employer is owed for reimbursement. Public Acts 2011, No. 11-205, § 1 (P.A. 11-205). The relevant portion of P.A. 11-205 provides: "If the action has been brought by the employee, the claim of the employer shall be reduced by one-third of the amount of the benefits to be reimbursed to the employer, unless otherwise *694 agreed upon by the parties, which reduction shall inure solely **568 to the benefit of the employee ...." Under this amendment, even if the employer is owed more than is recovered in the third-party action, the employee retains one third of the proceeds for his sole benefit.
The specific question we address in this appeal is whether the moratorium applies to the one-third portion of the employer's recovery that inures solely to the employee's benefit-that is, whether the employer has a right to a setoff against its obligation to pay for postjudgment workers' compensation benefits until those benefits exceed the one-third portion that the employee received from the proceeds of the third-party action. We conclude that the employee's one-third portion is not subject to the moratorium, and, as a result, the employer does not receive a credit against later arising benefits for the one-third portion paid to the employee.
I
In the present case, the plaintiff, Patrick Callaghan, was injured in a work related automobile collision while working for the defendant, Car Parts International, LLC.[2] The plaintiff brought an action for damages against a third party, who was also involved in the accident. The plaintiff also sought and received about $74,000 in workers' compensation benefits from the defendant. The plaintiff and the third party later settled the action for $100,000. The net proceeds of the settlement-after the deduction of attorney's fees and litigation costs-totaled about $66,000.
The plaintiff reimbursed the defendant out of the proceeds of the settlement, deducting for himself one third of the amount to be reimbursed, as required by § 31-293 (a). The defendant's two-thirds share of the net proceeds totaled about $44,000; the plaintiff's one-third share amounted to about $22,000.
**569 After the settlement and reimbursement, the plaintiff required additional medical care for the work related injury and was treated by his authorized physician. The defendant denied payment for the service, claiming that it was entitled to a moratorium in the amount of the net proceeds from the settlement paid to the plaintiff, specifically, about $22,000.
The parties went before a workers' compensation commissioner to determine the status of the moratorium. The defendant claimed that, although P.A. 11-205 permitted the plaintiff to keep his one-third share of the net proceeds, it did not eliminate the moratorium, created by our case law, requiring the plaintiff to exhaust the proceeds from the third-party action before receiving additional workers' compensation benefits from the defendant. The plaintiff responded that P.A. 11-205 commanded that the plaintiff's one-third share "shall inure solely to the benefit of the employee," which clearly and unambiguously indicated that the legislature did not intend for those proceeds to benefit any party other than the plaintiff, and, thus, those proceeds were not subject to the moratorium. The commissioner concurred with the defendant and allowed the moratorium.
The plaintiff sought review by the Compensation Review Board (board), which upheld the commissioner's decision. The board concluded that, because the text and legislative history of P.A. 11-205 did not explicitly direct that the moratorium should not apply to the one-third reduction, the moratorium should continue to apply, notwithstanding the direction in P.A. 11-205 that the reduction should solely *695 benefit the employee. This appeal by the plaintiff followed.[3] **570 II
Contrary to the decisions of the commissioner and the board, we conclude that the moratorium does not apply to the one-third reduction in favor of the plaintiff. The text added to § 31-293 (a) by P.A. 11-205 clearly and unambiguously intended for the one-third reduction to be for the employee's sole benefit. Although we agree that the added text and the legislative history concerning its enactment do not specifically address the moratorium, applying the moratorium to the reduction would erode the benefit conferred on the employee by P.A. 11-205. The moratorium would require the employee to use the proceeds from the one-third reduction to pay any future expenses that otherwise would be covered by workers' compensation benefits from the employer and, thus, contradict the clear directive that the "reduction shall inure solely to the benefit of the employee ...." (Emphasis added.) General Statutes § 31-293 (a). Because application of the moratorium would conflict with and undermine the clear intent of the text added to § 31-293 (a) by P.A. 11-205, we conclude that the moratorium should not apply to the one-third reduction. We therefore reverse the decision of the board and direct it to deny the defendant's request for a moratorium on the plaintiff's workers' compensation benefits.
A
This case requires us to determine whether and to what extent the language added by P.A. 11-205 to § 31-293 (a) impacts our prior case law that has interpreted § 31-293 (a) to implicitly allow the employer a moratorium. This presents a question of statutory interpretation subject to plenary review. See, e.g., Perez-Dickson v. Bridgeport , 304 Conn. 483, 507, 43 A.3d 69 (2012). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature.... In other words, we seek to **571 determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case .... In seeking to determine that meaning ... [General Statutes] § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) Id., at 507-508, 43 A.3d 69. If, however, the statutory text at issue "is susceptible to more than one plausible interpretation," we may appropriately consider extratextual evidence. (Internal quotation marks omitted.) Lackman v. McAnulty , 324 Conn. 277, 286, 151 A.3d 1271 (2016). In addition, because we have previously construed § 31-293 (a), we must consider its meaning in light of our prior cases interpreting the statute, including those cases establishing the moratorium. See, e.g., Commissioner of Public Safety v. Freedom of Information Commission , 312 Conn. 513, 527, 93 A.3d 1142 (2014) ("[i]n interpreting [statutory] language ... we do not write on a clean slate, but are bound by our previous judicial interpretations of this language and the purpose of the statute" [internal quotation marks omitted] ). *696 B
We start with the text of § 31-293 (a), as amended by P.A. 11-205. The relevant portion of P.A. 11-205 provides that, "[i]f the [third-party] action has been brought by the employee, the claim of the employer shall be reduced by one-third of the amount of the benefits to be reimbursed to the employer, unless otherwise agreed upon by the parties, which reduction shall inure solely to the benefit of the employee ...."[4]
**572 The text added by P.A. 11-205 altered the reimbursement procedures set forth in § 31-293 (a). Section 31-293 (a) generally allows the employer to receive reimbursement for workers' compensation benefits it has paid to or on behalf of an employee by giving the employer a "claim" against any proceeds obtained in a third-party action, whether that action was filed by the employer or the employee. According to § 31-293 (a), the "claim of the employer" consists of "(1) the amount of any compensation which [the employer] has paid on account of the injury which is the subject of the [third-party action] and (2) an amount equal to the present worth of any probable future payments which [the employer] has by award become obligated to pay on account of the injury." General Statutes § 31-293 (a). The employer's claim thus includes any benefits it has already paid at the time of the disposition of the third-party action and any future expenses that the employer has already become obligated to pay by the formal workers' compensation award.
Prior to the enactment of P.A. 11-205, General Statutes (Rev. to 2009) § 31-293 (a) gave the employer's claim complete precedence over the employee's right to receive damages from a third party, after deducting litigation costs and attorney's fees. In the absence of the language added by P.A. 11-205, the employee thus could not receive any damages from a third-party action unless the employer's claim had first been satisfied. Specifically, General Statutes (Rev. to 2009) § 31-293 (a) provided in relevant part that "the damages shall be so apportioned that the claim of the employer ... shall take precedence over that of the injured employee in the proceeds of the recovery, after the deduction of reasonable and necessary expenditures, including attorneys' fees, incurred by the employee in effecting the recovery...." Because the employer holds a superior claim to the proceeds, after accounting for litigation **573 costs, the employee could receive damages only if the proceeds from the third-party action were more than the amount necessary to fully reimburse the employer for its claim: "If the damages, after deducting the employee's [litigation] expenses ... are more than sufficient to reimburse the employer, damages shall be assessed in [the employer's] favor in a sum sufficient to reimburse [the employer] for [its] claim, and the excess shall be assessed in favor of the injured employee." General Statutes (Rev. to 2009) § 31-293 (a).
The text added to § 31-293 (a) by P.A. 11-205 altered this arrangement. The current text ensures that, regardless of the amount of an employer's claim, an employee who had brought the third-party action will receive at least one third of the net proceeds due the employer. The text accomplishes this by reducing the employer's claim by one third of the amount the employer otherwise would receive as reimbursement and directing that this reduction instead "shall inure solely to the benefit *697 of the employee ...." General Statutes § 31-293 (a). P.A. 11-205 thus creates a clear benefit in favor of the employee, to the detriment of the employer, by taking funds the employer otherwise would be entitled to receive and, instead, allowing them to pass to the injured employee, even if the net proceeds from the third-party action were not enough to reimburse the employer's claim.
C
The text of P.A. 11-205 is, however, silent on whether the moratorium applies to any proceeds paid to the employee because of the one-third reduction. To answer that question, we therefore consider our moratorium case law and how the moratorium would affect the reduction called for by P.A. 11-205. These considerations persuade us that extending the moratorium to the **574 one-third reduction would undermine and conflict with the plain language and purpose of P.A. 11-205.
We begin with an overview of our moratorium case law. The moratorium requires an employee who incurs additional workers' compensation expenses or who is entitled to additional workers' compensation benefits after a judgment has been rendered against a third party to use the employee's proceeds from that judgment, if any, to pay those additional expenses or to replace those benefits. As a general matter, the employer is required by § 31-293 (a) to continue paying workers' compensation benefits even if they arise after a favorable judgment against a third party. General Statutes § 31-293 (a) ("[t]he rendition of a judgment in favor of the employee or the employer against the [third] party shall not terminate the employer's obligation to make further compensation which the commissioner thereafter deems payable to the injured employee"). Nevertheless, our case law applying § 31-293 (a) has interpreted that section to implicitly allow a moratorium. Enquist v. General Datacom , supra, 218 Conn. at 25-26, 587 A.2d 1029 ; see also Rosenbaum v. Hartford News Co. , 92 Conn. 398, 401-402, 103 A. 120 (1918). Our moratorium cases have acknowledged that § 31-293 (a) is silent about a credit for the employer when the employee receives compensation from a third party. Enquist v. General Datacom , supra, at 25, 587 A.2d 1029. But drawing on the principle that we should construe the act, whenever possible, to avoid a double recovery for the employee, we have concluded that the employer should receive a credit against its obligation to pay workers' compensation benefits up to the amount the employee receives from an action against the responsible third party. Id., at 25-26, 587 A.2d 1029 ; Rosenbaum v. Hartford News Co. , supra, at 401-403, 103 A. 120. "Otherwise," we have reasoned, "the injured employee might first settle with the [tortfeasor] ... and then recover his statutory compensation also."
**575 Rosenbaum v. Hartford News Co. , supra, at 403, 103 A. 120. Once the amount of postjudgment workers' compensation benefits exceeds the employee's recovery, however, the employer again becomes obligated to pay those excess benefits. See Thomas v. Dept. of Developmental Services , 297 Conn. 391, 403, 999 A.2d 682 (2010).
If the moratorium were applied to the one-third reduction mandated by P.A. 11-205, the employee would be required to use the proceeds from this one-third reduction in lieu of future benefits that otherwise would be paid by the employer. Doing so would erode the benefit that the public act provides to the employee. Suppose, for instance, that an employee was injured on the job and the employer paid $10,000 in workers' compensation benefits. The employee then brought an action against a third party responsible for the injury and recovered $10,000. After deducting attorney's fees and litigation costs, *698 the net proceeds are $6600. In the absence of the text added by P.A. 11-205, the employer would be entitled to all $6600 as reimbursement for its claim, and the employee would receive nothing. But as a result of P.A. 11-205, the employer's reimbursement is reduced by one third, to $4400, and the remaining $2200 of the net proceeds would be paid to the employee for his sole use. Further suppose, however, that the employee needed additional treatment after the disposition of the third-party action. Applying the moratorium would relieve the employer of its obligation to pay the employee's future benefits up to the amount the employee received. The employee thus would be required to pay for the additional treatment out of the $2200 he had received, for his sole benefit, from the one-third reduction in the employer's reimbursement. Applying the moratorium would shift this benefit of the one-third reduction away from the employee, rendering the benefit only a temporary one. The moratorium would instead ultimately cause the one-third reduction **576 to benefit the employer by relieving it of its obligation to pay future workers' compensation benefits until the employee exhausted the proceeds he received.
D
In our view, shifting the benefit away from the employee, by requiring him to use the proceeds from the one-third reduction, would run contrary to the purpose and plain language of § 31-293 (a), which evidences a clear intent for the employee alone to retain the benefit of the one-third reduction. By stating that the reduction was to "inure solely to the benefit of the employee," the legislature expressed a clear intention with P.A. 11-205 that the employee, and no one else, should enjoy the use of that portion of the third-party proceeds.
Even if the text of P.A. 11-205 was unclear or ambiguous concerning the legislature's intent, the public act's legislative history confirms that the legislature intended for the employee, and not the employer, to retain sole use of the proceeds from the one-third reduction. This history clearly indicates the legislature intended that the employee's benefit from the one-third reduction would serve as an incentive to employees to pursue damages from responsible third parties. Legislators supporting the public act observed that employers and their insurance carriers often were not pursuing the third parties responsible for harm and that employees often had little incentive to do so because any recovery was often exceeded by the employer's claim, such that any recovery went entirely to the employer as reimbursement for workers' compensation benefits already incurred. The legislature passed P.A. 11-205 to provide an incentive to both employers and employees to pursue actions against the third parties who should bear primary responsibility for the employee's injury. The public act accomplished this by allowing employees to have the sole benefit of one third of the employer's claim.
**577 And it provided an incentive to employers by allowing them to avoid having their claim reduced by one third if they initiated the action instead, because the one-third benefit to employees applies only if the employee initiates the third-party action. In addition, even if an employee gets the benefit of the one-third reduction, a partial recovery may ultimately benefit employers, which might not otherwise spend their resources to pursue actions against responsible third parties.
Senator Eric D. Coleman explained P.A. 11-205 in the Senate, noting that "this bill would provide for one third of the reimbursement for workers' compensation payments or settlements to be reserved for the employee in the case." 54 S. Proc., Pt. 22, 2011 Sess., p. 7052. When asked about the policy behind this change, Senator *699 Coleman responded: "I think, fairly stated, the policy behind this legislation is simply to provide the employee some incentive to actually seek the recovery of whatever damages or award that could be secured from the third party that caused the accident." Id., p. 7054. The senator further clarified that, without the one-third portion, "there would be less incentive for the employee to pursue an action against the third party that caused the injury," primarily because the employee receives compensation from the employer for the injury, including some lost wages. Id., p. 7055.
Senator John A. Kissel, in support of the public act, observed that employees typically accept workers' compensation benefits for injuries rather than pursuing responsible third parties. He explained, "[i]f there is another, potential[ly] liable party, a third party, quite often those claims are tenuous and there really isn't that much of a motivation for the injured party, the employee, to bring that case to seek redress, especially if-if [the employee] go[es] through the process of seeking redress [and] the [employer] that paid the workers' compensation benefits gets most [or] all of the funds."
**578 Id., pp. 7060-61. The one-third payment, Senator Kissel explained, would provide employees an incentive to pursue third parties: "By taking one third and setting it aside, it acts as motivation or-or-it allows for individuals who may be up in the air as to whether to pursue that third-party claim to have the motivation to do that." Id., p. 7061.
Senator Kissel noted that the two-thirds payment reserved for the employer would ultimately help employers and their insurance carriers, despite the one-third reduction in favor of the employee: "And the reason why I think that's good for all parties concerned is because if we, in this way, somehow incent[ivize] the employee to seek out a claim against the third party and they're successful, then at least there will be some reimbursement back to the insurance provider who paid on the workers' compensation claim.... It's a good bill. It [will] actually help insurers, I believe, down the road, because they don't pursue these claims on their own; they need the injured party to initiate these. And if the injured party is successful, not only will the injured party's benefits get enhanced by what they're allowed to keep, but at least some portion of those proceeds will go to the employer." Id., pp. 7061-62.
Senator Coleman also noted that employers could avoid the one-third reduction simply by bringing the third-party action themselves. When asked what motivation this would provide to an employer or insurer, Senator Coleman responded: "[T]he reservation of one third of whatever is recovered would only apply if the employee brought the [action]. If the insurance carrier or the employer brought the [action], then the one-third reservation would not apply." Id., p. 7056.
These sentiments were also reflected in the debate before the House of Representatives, which preceded the Senate's consideration of the legislation. Representative **579 Gerald M. Fox brought out the bill in the House of Representatives. He remarked that the purpose of the bill was to encourage actions against third parties: "It certainly would be a benefit to the employee, this legislation. However, the testimony that came before the [Judiciary] Committee is that, many times, these cases are never brought because of the complications that can arise from reimbursement of 100 percent of [an employer's] lien [on the judgment in the third-party action]." 54 H.R. Proc., Pt. 10, 2011 Sess., p. 3183; see General Statutes § 31-293 (a) ("employer ... shall have a lien upon any judgment received by the employee against the [third] party"). He continued: "[W]hat happens in many cases is, whether it could be *700 a slip and fall situation or a motor vehicle accident ... when 100 percent of the lien is required to be reimbursed, the case is simply never brought, in which case the workers' [compensation] carrier would be out all of the lien. They wouldn't even receive the two thirds that would come from a disposition from a tort action against a third party."[5] 54 H.R. Proc., supra, p. 3188. **580 Representative Vincent J. Candelora then asked a further question to confirm the purpose of the legislation: "And I just presume ... the reason that [an employee would not bring an action against a responsible third party] is because the employee is made whole through workers' compensation, so it wouldn't make sense for them to bring a personal injury action if their employer is basically reimbursed 100 percent of the claim.... [I]s [P.A. 11-205] sort of giving a carrot to try to incentivize people for going after the appropriate parties?" Id., pp. 3183-84. Representative Fox replied: "[I]t might make it worthwhile to pursue a claim against the responsible party, the actual person who caused an injury, if it can be, if there's a better understanding of what it would be required to be reimbursed.... [W]hat this would do is allow for these claims to be brought, to be pursued. The workers' [compensation] carrier would receive two thirds of which, in many cases, they would receive nothing ...." Id., p. 3184.
The plain text of § 31-293 (a) clearly establishes, and the legislative history confirms, that the legislature intended the employee to receive the financial benefit from the one-third reduction in the employer's reimbursement as an incentive to pursue actions against third parties responsible for the employee's injuries. In this circumstance, we conclude that the moratorium must give way to the extent necessary to give full effect to P.A. 11-205. Although the legislature has acquiesced in our case law interpreting § 31-293 (a) to implicitly provide a moratorium; Enquist v. General Datacom , supra, 218 Conn. at 25, 26-27 n.7, 587 A.2d 1029 ; our application of our prior holdings must take into account the plain language and clear intent of later changes to the statute. Certainly, we must avoid construing statutory amendments so as to overrule the moratorium entirely without the legislature expressly stating an intent to do so. See id., at 25, 587 A.2d 1029 ("[i]n the absence of any express statutory language **581 or legislative history suggesting that our [moratorium] precedent was to be overruled, we decline to read the ... amendment ... as eliminating [the moratorium]"). But, in the present case, we are not asked to interpret P.A. 11-205 so as to entirely overrule our *701 moratorium case law; we are asked only to recognize a limited exception to the moratorium for the one-third reduction. Given the plain and unambiguous language of § 31-293 (a) and the clear legislative intent behind P.A. 11-205, it is hardly a stretch to conclude that the legislature intended for the employee to retain the financial benefit from the reduction, even if the employee receives additional workers' compensation benefits after the disposition of the third-party action. As a result, we conclude that the moratorium should not apply to any proceeds the employee receives from a third-party action as a result of the one-third reduction mandated by P.A. 11-205. The moratorium would, however, continue to apply to any additional proceeds the employee received from the third-party action.
E
The defendant nevertheless argues that allowing the plaintiff to keep the one-third reduction while having future workers' compensation expenses paid for by the defendant would essentially give the plaintiff a duplicative recovery: the defendant would end up paying for all of the plaintiff's injury related expenses, while the plaintiff also recovers some damages for the same injury from a third party. For several reasons, we are not persuaded that concerns of duplicative recovery should alter our interpretation of the statute and our moratorium case law.
To be sure, allowing the employee to retain the one-third reduction and to continue to have injury related workers' compensation benefits paid by the employer might result in the employee's receiving some duplication **582 in compensation. And we acknowledge that concerns of double recovery, in part, led this court to interpret § 31-293 (a) to include a right to a moratorium in the first place. See Rosenbaum v. Hartford News Co. , supra, 92 Conn. at 403, 103 A. 120 ; see also Enquist v. General Datacom , supra, 218 Conn. at 26, 587 A.2d 1029. We explained in Enquist that, if we interpreted the statutory amendment at issue in that case to overrule our moratorium case law, "a claim made subsequent to the disposition of a [third-party] action would result in the employee receiving compensation from both the [third-party] wrongdoer and the employer. In the absence of explicit statutory language mandating such a result, we decline to adopt such a construction." Enquist v. General Datacom , supra, at 26, 587 A.2d 1029.
In the present case, and unlike in Enquist , however, the statutory amendment before us does contemplate the possibility of providing the employee with duplicative sources of recovery. The text of P.A. 11-205 expressly requires that the employer's claim for reimbursement, including for expenses already paid, be reduced and the reduction be given instead to the employee, even though the employer has already paid the employee's workers' compensation benefits. Because the legislature's command that the employee shall receive the sole benefit of this reduction gives rise to the potential for a duplicative recovery, we are not persuaded that these concerns should alter our construction of § 31-293 (a) in the present case. See Weinberg v. ARA Vending Co. , 223 Conn. 336, 348, 350, 612 A.2d 1203 (1992) (noting that principle against double recovery "is not inviolate" and carries less force when legislative language clearly created possibility of duplicative recovery).
Moreover, a double recovery will not arise in all cases. For instance, an employee may receive compensation under the act for only physical injuries, not pain and **583 suffering, but may pursue these damages from a third party. See, e.g., Cruz v. Montanez , 294 Conn. 357, 371, 984 A.2d 705 (2009). Nevertheless, if an employee *702 recovers damages for pain and suffering in a third-party action, even though the act does not compensate for these damages, they must be used to satisfy the employer's claim for its payment of economic damages. Id., at 369-71, 984 A.2d 705 (employer's right to reimbursement from third-party proceeds extends to recovery for noneconomic damages, even though act does not provide compensation for noneconomic harms). In any case in which an employee recovers an award for noneconomic damages, like pain and suffering, the one-third reduction would allow the employee to obtain compensation for some of those damages without creating duplication.
Lastly, the principle cautioning against allowing duplicative recovery is less persuasive when, as in the present case, the employer has control over whether the employee will receive duplicative compensation at the employer's expense. See Goodyear v. Discala , 269 Conn. 507, 524-25, 849 A.2d 791 (2004) (giving less weight to double recovery concerns when employer could have avoided duplicative compensation to employee by exercising its rights under General Statutes [Rev. to 1995] § 31-293 [a] ). As mentioned previously, the one-third reduction mandated by P.A. 11-205 applies only when the employee brings the third-party action; the employer can avoid the reduction in its claim by instead bringing the action itself. The defendant in the present case did not do so, giving rise to the reduction in favor of the plaintiff. Because the defendant did not pursue its right under § 31-293 (a) to proceed against the third party directly, the defendant's actions are at least partly responsible for any duplicative recovery the plaintiff might receive by retaining the benefit of the one-third reduction. See id., at 524, 849 A.2d 791 ("[a]lthough we agree with the [employer] that we previously **584 have considered the goal of preventing double recovery when construing legislation in [workers' compensation] cases ... we do not agree that this means that the policy against double recovery compels us to recognize the [employer's interpretation of the statute] in light of the [employer's] failure to exercise its rights under [General Statutes (Rev. to 1995) ] § 31-293 [a]" [citations omitted] ).
The decision of the Compensation Review Board is reversed and the case is remanded to the board with direction to reverse the decision of the commissioner.
In this opinion the other justices concurred.

In this opinion, we use the phrase "workers' compensation benefits" to refer generally to the benefits or payments mandated by the provisions of the act, including, but not limited to, payments for medical expenses or payments to compensate for a resulting disability. See General Statutes § 31-275 (4) (defining compensation for purposes of act).

Peerless Insurance Company, the defendant's insurer, was also named as a defendant in this action. For purposes of clarity, in this opinion, we refer to Car Parts International, LLC, as the defendant.

The plaintiff appealed from the decision of the board to the Appellate Court, and this court transferred the appeal to itself. See General Statutes § 51-199 (c) ; Practice Book § 65-1.

P.A. 11-205 made an additional change to § 31-293 (a), but that change is not relevant to the present appeal.

The defendant seizes upon other comments made by Representative Fox concerning the "solely to the benefit of the employee" language in P.A. 11-205 to argue that the one-third reduction should be subject to the moratorium. Specifically, Representative Fox stated the following during the House debate on the bill: "I do want to make one thing clear as well. There is language here that says the reduction shall inure solely to the benefit of the employee.... [T]he purpose of that line is to make it clear that the one-third reduction does not go ... to the plaintiff's attorney in addition to any fee that they may already be entitled to." 54 H.R. Proc., supra, pp. 3174-75. The defendant asserts this passage demonstrates that the purpose of the "solely to the benefit of the employee" language in P.A. 11-205 was not to prevent the employer from later benefiting from the reduction by applying the moratorium but to simply make sure that the one-third reduction was not used to pay the plaintiff's attorney.
We disagree. The language that the legislature enacted sweeps more broadly than simply ensuring that the reduction does not get paid to the plaintiff's attorney. Its command that the reduction should "solely" benefit the employee unambiguously means that the reduction shall not benefit any other person or entity, including the employer, the attorney, the third-party tortfeasor, or anyone else.