******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# ELIZABETH M. DODGE, EXECUTRIX (ESTATE OF STEPHEN M. DODGE), ET AL. *v.* COMMISSIONER OF MOTOR VEHICLES ET AL. (SC 21181)

Mullins, C. J., and McDonald, D'Auria, Ecker, Alexander, Dannehy and Bright, Js.

*Syllabus*

Pursuant to the Workers' Compensation Act (§ 31-293 (a)), an injured employee may assert a claim against and recover damages from a tortfeasor who is allegedly liable for the employee's work-related injury, even if the employee is entitled to workers' compensation benefits for that injury, and an employer that has paid or has become obligated to pay those benefits to the employee "shall have a lien upon any judgment . . . or any settlement received by the employee from the [tortfeasor]."

The plaintiff, as executrix of the decedent's estate and as the decedent's surviving spouse, had filed for workers' compensation benefits after the decedent died of mesothelioma, which was caused in substantial part by his exposure to products containing asbestos during the course of his employment with the defendants, the Commissioner of Motor Vehicles and the town of Manchester. Prior to filing her claims for benefits, the plaintiff settled numerous product liability actions that she had brought against the manufacturers and suppliers of the products containing asbestos to which the decedent had been exposed, with 70 percent of the net settlement proceeds awarded to the decedent's estate as damages for his personal injuries and death, and 30 percent of the proceeds awarded to the plaintiff for her loss of consortium. With respect to the plaintiff's claim for workers' compensation benefits, an administrative law judge of the Workers' Compensation Commission found that the decedent's exposure to asbestos, both at home and during the course of his employment with the defendants, was a significant factor in causing the decedent to develop mesothelioma. Because the decedent's mesothelioma was caused in substantial part by this exposure to asbestos during his employment, total incapacity benefits were awarded to the decedent's estate and survivor's benefits were awarded to the plaintiff. The administrative law judge determined, however, that the defendants, as the decedent's employers, were entitled under § 31-293 (a) to a lien on the net amount of the settlement proceeds recovered by the decedent's estate, even though most of those proceeds were attributable to the decedent's nonoccupational exposure to asbestos. The Compensation Review Board upheld the decision of the administrative law judge. On appeal, the plaintiff claimed, inter alia, that the nonoccupational portion of the settlement proceeds awarded to the decedent's estate were not subject to a lien under § 31-293 (a) because the decedent's exposure to asbestos outside of work did not constitute a work-related "injury" within the meaning of § 31-293 (a). *Held*:

The administrative law judge correctly concluded that the defendants were entitled under § 31-293 (a) to a lien on the net settlement proceeds recovered by the decedent's estate that were attributable to both the decedent's occupational and nonoccupational exposure to asbestos to offset the workers' compensation benefits awarded to the plaintiff, and, therefore, this court affirmed the decision of the Compensation Review Board.

A work-related "injury," for purposes of § 31-293 (a), is defined by statute (§ 31-275 (16) (A)) and includes an "occupational disease," which is a disease that is so distinctively associated with an employee's occupation that there is a direct causal connection between the duties of employment and the disease contracted, and a direct causal connection exists when the employment was a substantial contributing factor in the employee's development of the disease.

Accordingly, an occupational disease is fully compensable under the act, even if it is caused by both occupational and nonoccupational factors, so long as the occupational factors substantially contributed to the development of the disease.

In the present case, the decedent suffered from a single disease, i.e., mesothelioma, and that disease was a work-related injury under § 31-293 (a) because it had a direct causal connection to his employment, even though it was caused in part by the decedent's exposure to asbestos outside of work.

The decedent's occupational disease of mesothelioma was fully compensable under the act and the workers' compensation benefits for which the defendants were liable were not reduced to account for the portion of the decedent's occupational disease caused by his nonoccupational exposure to asbestos, and, because an employer's lien rights are generally the same as its obligation to pay workers' compensation benefits, the defendants were entitled to a lien on the net amount of the product liability settlement proceeds recovered by the decedent's estate, including proceeds related to the decedent's occupational and nonoccupational exposure to asbestos.

The plaintiff could not prevail on her alternative claim that the product liability settlements were not paid by "person[s]" within the meaning of § 31-293 (a) insofar as there was no employment relationship between the nonoccupational tortfeasors and the decedent, as the statute uses that term broadly to refer to any person "other than an employer . . . [who has] a legal liability to pay damages for the [employee's work-related] injury," and nothing in this court's case law conditions an employer's lien rights under § 31-293 (a) on the existence of an employment relationship between the employee and the tortfeasor liable for the employee's work-related injury.

Argued January 28—officially released April 21, 2026

*Procedural History*

Appeal from the decision of the administrative law judge for the Eighth District of the Workers' Compensation Commission awarding the decedent certain disability

benefits, brought to the Compensation Review Board, which affirmed the administrative law judge's decision, and the plaintiffs appealed. *Affirmed.*

*Christopher Meisenkothen*, for the appellants (plaintiffs).

*Evan O'Roark*, deputy solicitor general, with whom, on the brief, were *William Tong*, attorney general, and *Patrick Finley*, assistant attorney general, for the appellee (named defendant).

*Opinion*

ECKER, J. The decedent, Stephen M. Dodge, died of a fatal disease caused by exposure to airborne asbestos fibers at both work and home. Following his death, the decedent's wife and the executrix of his estate, the plaintiff Elizabeth M. Dodge,[1] received tort settlements from the manufacturers and suppliers of certain asbestos-containing products, as well as an award of workers' compensation benefits under the Workers' Compensation Act (act), General Statutes § 31-275 et seq. The sole issue on appeal is whether the decedent's former employers, the state of Connecticut and the defendant town of Manchester (town), are entitled to a lien under General Statutes § 31-293 (a) on the tort settlement proceeds attributable to the decedent's nonoccupational exposure to asbestos. We conclude that, because the decedent's disease was a work-related injury within the meaning of § 31-293 (a), the administrative law judge for the Eighth District of the Workers' Compensation Commission (commission) correctly determined that the decedent's employers were entitled to a lien on the net amount of the tort settlement proceeds recovered for both occupational and nonoccupational asbestos exposure to offset the workers' compensation benefits awarded to the plaintiff. We therefore affirm the decision of the Compensation Review Board (board) upholding the decision of the commission.

----

[1] We hereinafter refer to Elizabeth M. Dodge as the plaintiff throughout this opinion.

The following facts were found by the commission or are undisputed. The decedent, who was born in 1950, was exposed to airborne asbestos fibers throughout his lifetime. With respect to nonoccupational exposures, during his childhood and early adulthood, the decedent used grinding wheels, joint compounds, drywall, and insulation that were all known to contain asbestos. As for occupational exposures, the decedent was exposed to airborne asbestos fibers during the summer of 1967, when he swept and buffed flooring that contained asbestos while working as a custodian for the town. The decedent also was exposed to airborne asbestos fibers during his employment with the state as an analyst for the Department of Motor Vehicles from 1973 to 2003. During that thirty year period, the decedent worked at the department's headquarters in Wethersfield, which contained asbestos material throughout the building and elevated concentrations of asbestos fibers in the air.

In 2011, the decedent was diagnosed with malignant peritoneal mesothelioma. Mesothelioma "is a 'signature' or 'sentinel' disease for asbestos exposure, meaning that such exposure is the only known cause. Mesothelioma is caused by the inhalation of asbestos fibers and typically takes decades to develop. There is a dose-response relationship between asbestos exposure and mesothelioma; in other words, the more exposure a person has, the greater is the likelihood that he or she will contract the disease." *Bagley* v. *Adel Wiggins Group*, 327 Conn. 89, 93, 171 A.3d 432 (2017).

In 2012, the decedent died as a result of complications from mesothelioma, and the plaintiff subsequently was appointed the executrix of his estate. The plaintiff, in her personal capacity as the decedent's wife and in her representative capacity as the executrix of his estate, filed product liability actions against various manufacturers and suppliers of certain asbestos-containing products to which the decedent had been exposed during his lifetime. Those actions ultimately settled, resulting in the plaintiff's gross recovery of $522,424.30 in tort settlement

proceeds. Only a small portion of those proceeds, $31,500, was attributable to the decedent's work-related exposure to asbestos (occupational exposure). The balance, $490,924.30, was paid for the decedent's exposure to asbestos outside of work (nonoccupational exposure). After the deduction of attorney's fees and expenses, the net amount of the tort recovery was $337,048.71, 30 percent of which ($101,114.61) was paid to the plaintiff personally as damages for her loss of consortium and 70 percent of which ($235,934.10) was paid to the decedent's estate as damages for his personal injuries and death as a result of mesothelioma.

The plaintiff also filed claims for workers' compensation benefits on behalf of the decedent's estate and on her own behalf as the decedent's surviving dependent. The commission found that the decedent's exposures to airborne asbestos fibers at both work and home were significant factors in causing him to develop mesothelioma. Because the decedent's mesothelioma was caused in substantial part by his exposure to asbestos at work, the commission determined that it was an occupational disease arising out of and in the course of his employment that was fully compensable under the act. The commission awarded the decedent's estate total incapacity benefits in the amount of $41,061.71, finding that the decedent was totally incapacitated as a result of his occupational disease from the date of his diagnosis with mesothelioma in June, 2011, until the date of his death in February, 2012.[2] The commission also awarded the

---

[2] Although the commission found that the decedent was totally incapacitated, it concluded that an award of total incapacity benefits was barred by the decedent's voluntary retirement in 2003, pursuant to the Appellate Court's decision in *Cochran* v. *Dept. of Transportation*, 220 Conn. App. 855, 299 A.3d 1247 (2023), rev'd, 350 Conn. 844, 327 A.3d 901 (2024); see id., 867–70 (employee's voluntary retirement prior to incapacity rendered him ineligible for total incapacity benefits under General Statutes § 31-307 (a)). Following the commission's decision, this court reversed the judgment of the Appellate Court in *Cochran*, holding that § 31-307 (a) "entitles all medically qualified claimants to receive total incapacity benefits, with no exception for those claimants who may also be voluntarily retired." *Cochran* v. *Dept. of Transportation*, 350 Conn. 844, 854, 327 A.3d 901 (2024). Pursuant to this court's holding

plaintiff a funeral allowance in the amount of $4000 and weekly survivor's benefits in the amount of $822,192.29 for the time period between the decedent's death in 2012, and the issuance of the commission's decision in 2024. See General Statutes § 31-306 (a) (1) and (2).

Having calculated the amount of the workers' compensation award, the commission addressed whether the decedent's employers were entitled under § 31-293 (a) to a lien[3] on the tort damages recovered by the plaintiff in her personal and representative capacities. It was undisputed that the portion of the net tort settlement proceeds attributable to the decedent's *occupational* exposure to asbestos was subject to the statutory lien. As for the $101,114.61 in tort damages recovered by the plaintiff personally for her loss of consortium damages, the commission cited to *Lesco* v. *Glass Crafters*, No. 3915, CRB 03-98-10 (January 19, 2000), and found that this amount "should [not] be included in the [lien] . . . [consistent] with the case law."[4] The remaining question for resolution by the commission was the same as the issue presented in this appeal: was the portion of the $235,934.10 in net tort settlement proceeds for the decedent's *nonoccupational* exposure to asbestos subject to the statutory lien? The commission answered that question in the affirmative,

in *Cochran*, the parties stipulated that the decedent was "entitled to $41,061.71 in total disability benefits, as originally calculated" by the commission. The commission subsequently approved the stipulation and awarded the decedent's estate total incapacity benefits in the amount of $41,061.71. The award of total incapacity benefits is not at issue in this appeal.

[3] In the proceedings below, the terms lien, credit, moratorium, and reimbursement were used interchangeably to refer to an employer's subrogation rights under § 31-293 (a). We will use the term "statutory lien" or "lien" in this opinion for the sake of consistency, unless the context requires otherwise.

[4] In *Lesco*, the board concluded that "[§] 31-293's employer entitlement to a credit for amounts recovered from a third party does not extend to a settlement received by a claimant's spouse for damages resulting from her loss of the claimant's consortium." (Internal quotation marks omitted.) *Lesco* v. *Glass Crafters*, supra. The board's denial of a lien with respect to the plaintiff's loss of consortium damages is not challenged on appeal.

holding that the decedent's employers were entitled to a lien on the net amount of the tort settlement proceeds received by the decedent's estate (\$235,934.10), even though most of those proceeds were attributed to the decedent's nonoccupational exposure to asbestos. The board affirmed the decision of the commission, and this appeal followed.[5]

On appeal, the plaintiff claims that the nonoccupational portion of the tort settlement proceeds are not subject to a lien under §31-293 (a) because the decedent's exposure to asbestos outside of work did not constitute a work-related "injury," as defined by the act, and because the settlements were not paid by "person[s] . . . [with] a legal liability to pay damages for the [decedent's] injury" within the meaning of §31-293 (a). The defendants, the Commissioner of Motor Vehicles and the town,[6] respond that the decedent suffered a single compensable work-related "injury" under §31-293 (a), even though the injury was caused by both occupational and nonoccupational exposures. The defendants further contend that the tortfeasors were "person[s]" liable for the decedent's work-related injury because they manufactured or supplied asbestos-containing products that were substantial factors in causing the decedent's occupational disease of mesothelioma. Because the plaintiff received workers' compensation benefits and tort settlement proceeds for the same injury, the defendants maintain that they are entitled under §31-293 (a) to a lien on the net amount of the tort settlement proceeds attributable to both occupational and nonoccupational exposure to asbestos. We agree with the defendants.

Resolution of the issue on appeal requires us to construe the language of §31-293 (a). Although courts will

---

[5] The plaintiff appealed from the decision of the board to the Appellate Court; see General Statutes §31-301b; and we transferred the appeal to this court pursuant to General Statutes §51-199 (c) and Practice Book §65-1.

[6] Counsel for the town did not file an appellate brief and, instead, filed a statement adopting the arguments set forth in the brief filed by the named defendant, the Commissioner of Motor Vehicles.

defer to the board's interpretation of a statute if it is reasonable, time-tested, and has been subjected to judicial scrutiny, the board's interpretation of §31-293 (a) is not entitled to deference because it is neither time-tested, nor has it been subjected to judicial scrutiny. See, e.g., *Gardner* v. *Dept. of Mental Health & Addiction Services*, 351 Conn. 488, 495, 331 A.3d 1203 (2025); *Thomas* v. *Dept. of Developmental Services*, 297 Conn. 391, 398–99, 999 A.2d 682 (2010). We therefore review the language of the statute de novo, consistent with our well established principles of statutory construction and "our prior cases interpreting the statute . . . ." (Internal quotation marks omitted.) *Gardner* v. *Dept. of Mental Health & Addiction Services*, supra, 495–96; see also General Statutes §1-2z.

It is useful to begin by reviewing the relevant background principles of workers' compensation law. "When an employee suffers a work-related injury, workers' compensation benefits are the exclusive remedy as between the employee and the employer. General Statutes §31-284 (a). The employee, however, may bring a civil action against parties other than the employer who are responsible for the employee's injuries. See General Statutes §31-293." (Internal quotation marks omitted.) *Cruz* v. *Montanez*, 294 Conn. 357, 366, 984 A.2d 705 (2009). Section 31-293 (a) grants the employer the right to intervene as a plaintiff in the employee's civil action and provides in relevant part that, "[i]f the employer and the employee join as parties plaintiff in the action and any damages are recovered, the damages shall be so apportioned that the claim of the employer, as defined in [§31-293 (a)],[7] shall

[7] Section 31-293 (a) defines the claim of the employer as consisting of "(1) the amount of any compensation which he has paid on account of the injury which is the subject of the suit, and (2) an amount equal to the present worth of any probable future payments which he has by award become obligated to pay on account of the injury. The word 'compensation,' as used in this section, shall be construed to include incapacity payments to an injured employee, payments to the dependents of a deceased employee, sums paid out for surgical, medical and hospital services to an injured employee, the burial fee provided by subdivision (1) of subsection (a) of section 31-306, payments made under the

take precedence over that of the injured employee in the proceeds of the recovery, after the deduction of reasonable and necessary expenditures, including attorneys' fees, incurred by the employee in effecting the recovery . . . ." (Footnote added.)

The employer, however, is not required to be a party to the employee's civil action against the tortfeasor to protect its right to reimbursement from a tort settlement under § 31-293 (a). The employer has the option to bring its own civil action against the tortfeasor "to recover any amount that [it] has paid or has become obligated to pay as compensation to the injured employee." General Statutes § 31-293 (a). Alternatively, the employer may place a lien on any tort damages that the injured employee or his dependents receive from tortfeasors liable for the employee's work-related injury. See General Statutes § 31-293 (a).

The defendants in this case did not join the plaintiff's product liability actions against the tortfeasors, and, therefore, the lien provision of § 31-293 (a) is the portion of the statute relevant to this appeal. That provision provides in relevant part that, "when any injury for which compensation is payable under the provisions of this chapter has been sustained under circumstances creating in a person other than an employer who has complied with the requirements of subsection (b) of section 31-284, a legal liability to pay damages for the injury and the injured employee has received compensation for the injury from such employer . . . pursuant to the provisions of this chapter, the employer . . . shall have a lien upon any judgment received by the employee against the party or any settlement received by the employee from the party, provided the employer . . . shall give written notice of the lien to the party prior to such judgment or settlement." General Statutes § 31-293 (a). By this

provisions of sections 31-312 and 31-313, and payments made under the provisions of section 31-284b in the case of an action brought under this section by the employer or an action brought under this section by the employee in which the employee has alleged and been awarded such payments as damages."

language, § 31-293 (a) affords an employer "the right to impose a lien on any judgment or settlement [recovered by its employee], up to the amount of its workers' compensation liability . . . ." *Soracco* v. *Williams Scotsman, Inc.*, 292 Conn. 86, 97, 971 A.2d 1 (2009). But see footnote 8 of this opinion.

The primary issue in the present case is whether the workers' compensation benefits awarded to the plaintiff in both her representative capacity as the executrix of the decedent's estate and in her personal capacity as the decedent's surviving dependent were for the same "injury" for which the tort settlements were recovered. "[T]he term 'injury,' as used in § 31-293 (a), refers to a work-related harm," as defined by § 31-275 (16) (A). *Goodyear* v. *Discala*, 269 Conn. 507, 514, 849 A.2d 791 (2004); see id., 513–14 and n.6. Section 31-275 (16) (A) defines a work-related "injury" to include an "accidental injury that may be definitely located as to the time when and the place where the accident occurred, an injury to an employee that is causally connected with the employee's employment and is the direct result of repetitive trauma or repetitive acts incident to such employment, and *occupational disease*." (Emphasis added.) " 'Occupational disease' includes any disease peculiar to the occupation in which the employee was engaged and due to causes in excess of the ordinary hazards of employment as such, and includes any disease due to or attributable to exposure to or contact with any radioactive material by an employee in the course of his employment." General Statutes § 31-275 (15).

This court has held that the statutory requirement that an occupational disease "be peculiar to the occupation and in excess of the ordinary hazards of employment . . . refers to those diseases in which there is a causal connection between the duties of the employment and the disease contracted by the employee. In other words, [the disease] need not be unique to the occupation of the employee or to the [workplace]; it need merely be so distinctively associated with the employee's occupation that there is a *direct*

*causal connection* between the duties of the employment and the disease contracted." (Emphasis added; internal quotation marks omitted.) *Estate of Doe* v. *Dept. of Correction*, 268 Conn. 753, 758, 848 A.2d 378 (2004); see, e.g., id., 754–55, 758 (human immunodeficiency virus was occupational disease with direct causal connection to claimant's employment as correction officer); *Chappell* v. *Pfizer, Inc.*, 115 Conn. App. 702, 704, 711, 975 A.2d 78 (2009) (asthma was occupational disease with direct causal connection to claimant's employment as chemical operator).

A direct causal connection in this context does not mean that the employee's "employment must be the *sole* contributing factor in development" of an occupational disease, or even a "*major* contributing factor . . . ." (Emphasis in original.) *Birnie* v. *Electric Boat Corp.*, 288 Conn. 392, 412, 953 A.2d 28 (2008). Instead, the requirement of a direct causal connection is met if the employment was a substantial contributing factor in the employee's development of the disease, that is, "if the employment *materially or essentially contribute*[*d*] to bring about [the] injury . . . ." (Emphasis in original; internal quotation marks omitted.) *Filosi* v. *Electric Boat Corp.*, 330 Conn. 231, 244, 193 A.3d 33 (2018). In short, an occupational disease is fully compensable under the act, even if it is caused by both occupational and nonoccupational factors, so long as the occupational factors substantially contributed to the development of the disease. See, e.g., *Deschenes* v. *Transco, Inc.*, 288 Conn. 303, 323 n.20, 953 A.2d 13 (2008) (recognizing that occupational disease is fully compensable under act if it is "a single disease that was caused by multiple factors, some of which were not occupational"); 4 L. Larson & T. Robinson, Larson's Workers' Compensation Law (2025) § 52.06 (4) (d) (recognizing that "a nonoccupational *cause*" may combine with occupational cause to result in occupational disease that is "fully compensable" under some states' workers' compensation laws (emphasis in original)).

In the present case, the decedent suffered from a single disease, mesothelioma, and his exposures to airborne asbestos fibers—both at work *and* at home—were substantial factors in causing the disease. For this reason, despite the multiple causes of the decedent's disease, mesothelioma was an "injury for which compensation is payable" within the meaning of §31-293 (a). The decedent's mesothelioma was a work-related injury under §31-293 (a) because it had a direct causal connection to his employment, even though it was caused in part by the decedent's exposure to asbestos outside of work.

The plaintiff claims that, even though the decedent suffered from a single disease, the defendants are not entitled to a lien under §31-293 (a) because the product liability tort settlements each were recovered for separate and distinct injuries sustained by the decedent. We disagree. As discussed previously in this opinion, the decedent sustained a *single* work-related injury, the occupational disease of mesothelioma, which was caused in substantial part by multiple exposures to airborne asbestos fibers both at work and home. The decedent's occupational disease consequently was fully compensable under the act, and the award of workers' compensation benefits was not reduced to account for the portion of the occupational disease caused by the decedent's nonoccupational asbestos exposures. Cf. *Deschenes* v. *Transco, Inc.*, supra, 288 Conn. 321–23 and n.20 (reducing workers' compensation benefits when employee developed two separate, concurrent diseases, one caused by occupational factors and other caused by nonoccupational factors, but clarifying that workers' compensation benefits cannot be reduced if there is "a single disease that was caused by multiple factors, some of which were not occupational"). Because an employer's lien rights, generally speaking, are the same as its payment obligations under the act, the decedent's employers were entitled to a lien on the net amount of the tort settlement proceeds.[8] In

[8] There is one significant exception to the symmetry between the employer's lien rights and payment obligations. Section 31-293 (a) provides that an employer's right of reimbursement is reduced by

the plain and unambiguous language of the statute, the tort settlements were paid by "a person other than an employer . . . [with] a legal liability to pay damages for the injury," and the employers' lien rights extended to "any judgment received by the employee against the party [i.e., the tortfeasor] or any settlement received by the employee from the party [i.e., the tortfeasor] . . . ." General Statutes § 31-293 (a).

Although the details in the record concerning the plaintiff's product liability claims are sparse,[9] it is clear that the tort settlement proceeds were paid as damages by each of the tortfeasors on the basis of their respective liability for causing the decedent's mesothelioma.[10] In the present action, the parties stipulated to the charac-

one third if the tort action was "brought by the employee," unless the employer is "the state of Connecticut or a political subdivision of the state including a local public agency . . . or the custodian of the Second Injury Fund." See *Callaghan* v. *Car Parts International, LLC*, 329 Conn. 564, 573, 188 A.3d 691 (2018) (portion of statute providing for one-third reduction "creates a clear benefit in favor of the employee, to the detriment of the employer, by taking funds the employer otherwise would be entitled to receive and, instead, allowing them to pass to the injured employee, even if the net proceeds from the third-party action were not enough to reimburse the employer's claim"). In the present case, the defendants are state and municipal entities, and, therefore, the one-third reduction does not apply.

[9] The parties stipulated to the admission of an exhibit that listed the date that each tort settlement was paid, the gross amount of each settlement, the net amount of each settlement, the claim type, and whether the settlement was for the decedent's occupational or nonoccupational exposure to asbestos.

[10] The plaintiff suggests that the injury for which the tort settlements were received was not the decedent's mesothelioma disease but, instead, the decedent's exposure to each asbestos-containing product. This argument is without merit. To prevail on a product liability claim, a plaintiff must do more than establish exposure to an asbestos-containing product. See, e.g., *Bagley* v. *Adel Wiggins Group*, supra, 327 Conn. 104–105. A plaintiff also must establish that the asbestos-containing product was dangerous because it released respirable asbestos fibers into the air and that the defective product caused the plaintiff to suffer personal injury, death, or property damage. See id.; see also General Statutes § 52-572m (b); *Gerrity* v. *R.J. Reynolds Tobacco Co.*, 263 Conn. 120, 126, 818 A.2d 769 (2003). The injury that the decedent suffered in this case was the occupational disease of mesothelioma, which was the very same work-related injury for which workers' compensation benefits were awarded.

terization of each of those tort settlements as involving either the occupational or nonoccupational exposure to asbestos-containing products. For the reasons previously explained, the distinction as to the type of exposure did not affect the defendants' lien rights. Once an entitlement to workers' compensation benefits was established, Connecticut law mandated payment of full workers' compensation benefits for the injury, even though it was caused in part by nonoccupational exposures. Because the decedent suffered a single work-related injury for which the plaintiff received both workers' compensation benefits and tort settlements, we conclude that the defendants properly were awarded a credit for the decedent's nonoccupational tort settlements under § 31-293 (a).[11]

The plaintiff claims in the alternative that the tort settlements were not paid by "person[s]," as that term is used in § 31-293 (a), because "there [was] no employment

---

[11] The plaintiff also relies on *R.T. Vanderbilt Co.* v. *Hartford Accident & Indemnity Co.*, 171 Conn. App. 61, 97, 156 A.3d 539 (2017), aff'd, 333 Conn. 343, 216 A.3d 629 (2019), which adopted the "continuous trigger" theory of insurance coverage in asbestos exposure cases. Under the continuous trigger theory, "every insurance policy in effect from the date a claimant is first exposed to asbestos until the date—often decades later—when the claimant manifests an asbestos related disease is on the risk for defense and liability costs." Id. The plaintiff argues that, because insurance "policies are triggered by inhalation exposure, exposure in residence, and manifestation of disease, it is proper to use 'injury' in multiple ways." The plaintiff's reliance on *R.T. Vanderbilt Co.,* is misplaced because the analysis in that case had nothing to do with the statutory definition of "injury" in § 31-275 (16) (A), the compensability of a workplace injury under the act, or an employer's statutory lien rights for a work-related injury under § 31-293 (a). Although the word "injury" might be susceptible to different interpretations depending on the legal and factual context in which it is used, our analysis necessarily is limited to the statutory definition of the term in the act, as construed by our case law. See, e.g., *State* v. *Panek*, 328 Conn. 219, 237, 177 A.3d 1113 (2018) (declining to rely on dictionary definition of term when legislature "has provided its own definition" because "[t]he legislature is free to diverge from the dictionary definition when defining a term for its purposes"); *Velecela* v. *All Habitat Services, LLC*, 322 Conn. 335, 338, 141 A.3d 778 (2016) ("our prior decisions interpreting a statute are not treated as extratextual sources for purposes of construing that statute and may be consulted as part of our reading of the statutory text" (internal quotation marks omitted)).

relationship between the nonoccupational tortfeasors and [the decedent] . . . ." We reject this claim because nothing in § 31-293 (a) requires an employment relationship between the employee and the "person" liable for the employee's work-related injury. To the contrary, the term "person" is used broadly in the statute to refer to any person "*other than an employer* who has complied with the requirements of subsection (b) of section 31-284, [who has] a legal liability to pay damages for the [employee's work-related] injury . . . ." (Emphasis added.) General Statutes § 31-293 (a);[12] see also General Statutes § 1-1 (k) ("[t]he [word] 'person' . . . may extend and be applied to communities, companies, corporations, public or private, limited liability companies, societies and associations"). Construing the term "person" in § 31-293 (a) to include an additional, unenumerated exception would run afoul of the basic tenet of statutory construction "that a court must construe a statute as written" and "may not by construction supply omissions . . . or add exceptions . . . ." (Internal quotation marks omitted.) *Doe* v. *Norwich Roman Catholic Diocesan Corp.*, 279 Conn. 207, 216, 901 A.2d 673 (2006).

Notwithstanding the plain and unambiguous wording of the statute, the plaintiff contends that our case law, specifically, *Dodd* v. *Middlesex Mutual Assurance Co.*, 242 Conn. 375, 698 A.2d 859 (1997), and *Goodyear* v. *Discala*, supra, 269 Conn. 507, conditions the employer's lien rights on an employment relationship between the employee and the tortfeasor liable for the employee's work-related injury. These cases are distinguishable. In *Dodd*, an employee who was injured in an automobile accident for which workers' compensation benefits were paid filed a breach of contract action against his own insurer seeking uninsured motorist benefits. See *Dodd* v. *Middlesex Mutual Assurance Co.*, supra, 377–78; see

---

[12] Section 31-275 (10) defines "employer" in relevant part as "any person, corporation, limited liability company, firm, partnership, voluntary association, joint stock association, the state and any public corporation within the state using the services of one or more employees for pay, or the legal representative of any such employer . . . ."

also id., 384–85. The employer sought to intervene in the employee's breach of contract action and to impose a lien on any insurance benefits awarded pursuant to General Statutes (Rev. to 1993) § 31-293 (a). See id., 378. This court determined that the employer could not intervene or impose a lien on the employee's recovery of uninsured motorist benefits in that action because § 31-293 (a) applies "to a traditional tort action against a wrongdoer"; id., 383; not a breach of contract "action to recover under an automobile insurance policy . . . ." Id., 384. "An action to recover under an automobile insurance policy is not an action in tort but, rather, an action in contract"; id.; and the employer therefore could not "be deemed a 'third party' under the statute, because that is the position held by the actual tortfeasor . . . ." Id., 385.

Likewise, in *Goodyear* v. *Discala*, supra, 269 Conn. 507, this court held that an employer lacked standing to intervene in an employee's legal malpractice action against that employee's former attorneys who had failed to pursue a tort claim against the tortfeasor responsible for causing the employee's personal injuries sustained in an automobile accident for which workers' compensation benefits were awarded. See id., 508–10. This court determined that the employee's legal malpractice action did not involve a work-related "injury" within the meaning of General Statutes (Rev. to 1995) § 31-293 (a) because the injury at issue in the legal malpractice action was not the injury sustained by the employee in the automobile accident but, rather, the employee's "loss of his right of action against [the tortfeasor] . . . ." Id., 514. The court further determined that the employee's former attorneys were not "person[s] in whom a legal liability has been created to pay damages for the employee's work-related injury" because they were not the actual tortfeasors who had caused the work-related personal injuries that the employee had sustained in the automobile accident. Id., 516. Although "the measure of damages arising from the legal malpractice action [was] similar to the measure of damages stemming from the work-related injury caused by [the tortfeasor]"; id., 518; we noted that "[t]he concept

of 'damages' . . . is distinct from the legal injury from which damages arise"; (footnote omitted) id.; and that "the mere fact that a similar measure of damages may flow from two different injuries . . . does not convert liability for damages stemming from one injury into liability for damages stemming from the other." Id., 519.

Unlike in *Dodd* and *Goodyear*, the tort settlements at issue in this case were recovered in traditional tort actions filed against the actual tortfeasors who had caused the decedent's work-related injury. The plaintiff filed product liability actions against the various tortfeasors who had manufactured or supplied asbestos-containing products that were alleged to have caused the decedent's mesothelioma, which was the same work-related occupational disease for which workers' compensation benefits were awarded. Stated simply, those tortfeasors were "person[s] . . . [with] a legal liability to pay damages for the [decedent's work-related] injury" within the meaning of § 31-293 (a). Under these circumstances, the defendants are entitled to a lien under § 31-293 (a) on the net amount of the tort settlement proceeds, regardless of whether those settlements were for the decedent's occupational or nonoccupational exposure to asbestos.

The decision of the Compensation Review Board is affirmed.

In this opinion the other justices concurred.